## 15504

### EDGE v. DUNEAN MILLS ET AL.

(24 S. E. (2d), 268)

190

April, 1942.

*Messrs. Mann & Arnold,* of Greenville, Counsel for Appellants,

*Messrs. Culbertson & Brown* and *Mr. Thomas A. Wofford,* all of Greenville, Counsel for Respondent,

Counsel for Appellants, in reply,

February 15, 1943.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE BAKER:

On July 31, 1937, while respondent was in the employ of Dunean Mills he sustained an injury to his head, the injury being a cut or gash over and close to the left eyebrow. He was found in an unconscious condition on the first landing of some steps leading out of the mills to the ground, and carried to a hospital in an ambulance, where treatment was rendered. The appellant, insurance carrier for Dunean Mills, under the Compensation Act, paid the hospital bill and medical bills. The respondent returned to .work on August 16, 1937, thereby losing eighteen days on account of the injury.

No compensation has been paid the respondent; and the insurance carrier advised the Industrial Commission on December 15, 1937, that in its opinion the injury to respondent was not compensable, and therefore denied disability benefits.

Respondent waited until April, 1941, to file a claim with the Industrial Commission for compensation for the loss of time from work and also a claim for disfigurement, and as set forth in the statement in the Transcript of Record: "and to determine whether the carrier had been guilty of fraud in not paying compensation."

The matter was heard before Commissioner Hyatt on May 14, 1941, and three months thereafter he filed his opinion granting respondent eighteen days temporary total disability and $175.00 for serious facial or head disfigurement.

Upon an appeal to the full Commission, which was heard on November 26, 1941, the award of Commissioner Hyatt was sustained by a majority of the Commission, Commissioners Martin and Todd dissenting; and thereafter, upon appeal to the Court of Common Pleas for Greenville County from the award of the majority Commission upon substantially the same grounds as those presented by the exceptions

to this Court, the findings and award of the majority Commission were affirmed by Judge Thurmond.

While the "Questions" presented to this Court by this appeal are stated somewhat differently by the respondent and the appellants, there is no material difference, and we adopt the Questions as stated by appellants, which are as follows:

"I. Does the failure to file claim with the Industrial Commission within one year from the date of accident, without legal excuse being shown, bar the claimant from all compensation?

"II. Did the injury suffered by Respondent result from accident or from disease?"

The first question is one solely of law and not of fact, since it is admitted that no formal claim was filed by respondent with the Industrial Commission for compensation until April, 1941, although on December 2, 1938, a letter was received by the Industrial Commission, addressed to the Workmen's Compensation Board and signed by the respondent, stating that in July, 1937, while working at Dunean Cotton Mill, Greenville, S. C., he had fallen down a flight of steps, from which he had lost twenty-one nights from work; that he had never been paid anything for loss of time, and that he didn't know whether this matter had ever been reported to the Commission or not. He also stated in this letter that he wanted them to help him recover something for the time he had lost and that the mill had recently discharged him, although he was willing to work. At that time the Industrial Commission wrote him that he had waited too long to file his claim; but respondent did not receive this letter.

The letter of December 2, 1938, was written on stationery of H. P. Burbage, Attorney at Law, Greenville, S. C.

The present attorneys for respondent in their brief dispose of this phase of notice to the Industrial Commission

in the following language: "Edge did not remember writing the letter but did not deny the same. It is reasonable to assume from a reading of the record that Edge complained to Attorney Burbage who wrote the letter and then the matter rested until another and more formal claim was filed by respondent on March 18, 1941."

Respondent does not claim that this notice complied with the Act, and indeed it will readily be seen that such notice, even if in proper form, was not filed within one year from the date respondent was injured.

Section 24(a) of the Workmen's Compensation Act (Code 1942, Section 7035-27 (1) provides: "The right to compensation under this Act shall be forever barred unless a claim is filed with the industrial commission within one year after the accident, and if death results from the accident, unless a claim be filed with the commission within one year thereafter."

At the hearing before the single Commissioner, the appellants specifically pleaded and relied on the above-quoted section of the Act. Such plea was recognized by the hearing Commissioner but in rendering his opinion and award he did not pass on said plea except indirectly where he referred to Section 49 of the Workmen's Compensation Act (Code 1942, Section 7035-52), and which reads as follows: "No limitations of time provided in this Act for the giving of notice or making claim under this Act shall run against any person who is mentally incompetent, or a minor defendant, as long as he has no guardian, trustee, or committee."

As stated in appellants' brief, the hearing Commissioner did not find, as a matter of fact, that respondent was mentally incompetent. And we add, neither did the majority Commission nor the Circuit Judge; and if there had been such holding, there is nothing in the record on which to base same.

The only medical testimony in the case, that given by Dr. T. M. Northrop, is that on April 15, 1941, the respondent

was "undergoing a gradual degenerative mental process that so frequently occurs in cases of long standing epilepsy." (Further reference will be made to the fact that respondent suffered from attacks of epilepsy in our discussion of Question 2.) Further, on the day of the hearing, May 14, 1941, that the respondent was at that time undergoing a degenerative mental process and that if he did not receive treatment the normal expectancy was that he would get worse instead of better, and that it was reasonable to assume that for the past four or five years that that process had been in progress.

Dr. Northrop also testified that when he examined respondent in 1937, he did not see any evidence of degeneration and that he did not think that he had any in 1937; and positively testified that respondent was not mentally incompetent when he saw him in 1937. There was in evidence the fact that after his injury the respondent had continued to work at Dunean Mills for approximately a year and one-half, and at Judson Mill from November, 1938, to July, 1940, doffing in the spinning room. Upon this information and other information, and his personal knowledge of respondent, Dr. Northrop gave as his opinion that respondent's mental condition was all right in 1938, 1939 and 1940, when he was working.

Aside from the medical testimony, the respondent admitted that he had worked when physically able to do so at Dunean Mills and Judson Mill for the periods hereinabove stated, aggregating about thirty-four months following his injury, and that he had consulted with Honorable H. P. Burbage, a member of the Greenville, S. C., Bar, as to any rights that he might have against Dunean Mills, but refused to either affirm or deny that he had written the letter hereinabove referred to. He stated, however, that after conferring with Mr. Burbage he did not hear from him and therefore did not go back to see him. Indeed, the respondent himself did not contend that he was mentally incompetent.

He testified: "I have not been crazy or anything like that;" "I don't say that I am crazy or anything, I reckon I have as much sense as anybody else  *  *  *."

We have not of course undertaken to refer to all of the testimony concerning the mental condition of the respondent extending from the time he was injured up until the time of the hearing on his claim, but we have carefully studied the record and are unable to find even a scintilla of evidence that respondent was mentally incapacitated to file a claim with the Industrial Commission within even two years following his injury at Dunean Mills in 1937. The phrase, "mentally incompetent" cannot be held to apply to a person merely because he may perhaps be ignorant of his legal rights, and the testimony of the respondent before Commissioner Hyatt in May, 1941, demonstrates that he could not be classed as mentally incompetent under a most liberal construction of that phrase, which in its ordinary meaning imports mental deficiency so great as to render one unable to comprehend or transact the ordinary affairs of life.

There is not the slightest basis for holding that the employer or the carrier were chargeable with "legal fraud." Surely the payment of the medical and hospital bills incurred when there was no legal liability is far from indicating any type of fraud. Hence, it seems to us that the plain and unambiguous provisions of Section 24(a) require a reversal of the judgment.

This Court has heretofore held that effect must be given to the limitations written in the Workmen's Compensation Act as a protection to employers and insurance carriers in resisting long delayed demands. See *Wallace v. Campbell Limestone Company*, 198 S. C., 196, 17 S. E. (2d), 309.

Having held that respondent was barred by the limitation expressed in Section 24(a) of the Act, it is really unneces-

sary to discuss Question 2. However, we will briefly discuss it.

Section 2(f) of the Act (Code 1942, Section 7035-2(f) is as follows: "(f) 'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident."

The respondent's testimony shows that he was subject to epileptic spells and had been so subject for several years; that he had never told anyone for whom he worked at Dunean Mills that he had epileptic fits, and so far as he knew, no one there knew of such spells; that he could tell when one of these spells was coming on him and that he tried to protect himself by sitting down quietly and where he would not fall and be injured; that on this particular occasion he felt one of the spells coming on and was going to a back alley to sit down and get out of the way so that he would not injure anyone or get injured in the machinery. A Mr. Harvey, who was respondent's overseer, upon learning that respondent felt sick, requested him to go outside of the mill and get some fresh air—sit on the grass until he felt better, it being rather warm in the room where he worked; that he got to the doorway leading to the stairs, and after opening the door was the last that he remembered. He stated: "When I opened the door to go down steps that is the last thing I remembered. I don't know whether I fell down steps or somebody knocked me down in the head or what. The next day I know I was in the hospital when I came to my senses." He further testified "I opened the door to go down the steps and that is the last time I remembered anything."

The only reasonable inference which can be drawn from this testimony and other testimony in the record is that as respondent opened the door to go down the steps he was beseiged with a spell of epilepsy which rendered him unconscious and as a result he fell down a part of a flight of steps

to the first landing. No one saw him fall and he was found on the first landing of the steps a few minutes later in an unconscious condition, and rushed to a hospital.

This Court has repeatedly held that an award of the ■ Industrial Commission must be founded on evidence and it cannot rest on surmise, conjecture or speculation.

There is a total absence of testimony that respond- ■ ent's injury was caused by an accident arising out of and in the course of his employment, and on the other hand the only inference to be drawn from all of the testimony is that respondent's injury was caused by an attack of epilepsy.

The judgment appealed from is reversed and the case is remanded to the Court of Common Pleas for Greenville County for entry of judgment in favor of appellants.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGE G. DEWEY OXNER, ACTING ASSOCIATE JUSTICE, concur.