15926

YOUNG v. SONOCO PRODUCTS CO. *ET AL.*

(41 S. E. (2d) 860)

*Messrs. Jno. F. Wilmeth* and *Robt. W. Shand,* of Harts-
ville, for Appellants, cite:

148

*Mr. B. W. Hyman*, of Darlington, for Respondent, cites:

March 14, 1947.

OXNER, AJ.: This is an appeal by the employer and carrier from an order of the Circuit Court affirming an award of the Industrial Commission in favor of claimant, Mrs. Ella S. Young. The Commission awarded claimant compensation for 50% loss of use of the right arm and also $250.00 for serious bodily disfigurement on account of an alleged accident sustained on February 4, 1944. There are two questions for determination: (1) Did claimant's injury result from an accident? (2) Is the right to any compensation barred by failure to file claim with the Industrial Commission within one year after the alleged accident? These two questions will be discussed in the order stated.

For a period of approximately two years prior to February 4, 1944, claimant was employed at the plant of the Sonoco Products Company, hereinafter for convenience referred to as "Sonoco", and operated what is known as a scorer. She testified that in operating this machine the employee has to "hold the cone with the left hand and break with the right"; that in breaking cones, "it is an awkward twist for you have to twist it backwards, not like you usually turn something"; that on February 4, 1944, while twisting a cone, she "had a sudden tearing pain" in her right elbow; and that although she had been operating this particular machine for ten months previously, she had not suffered any trouble with her arm prior to this time except

for a slight soreness which did not interfere with her work. Immediately after the above occurrence, claimant went to the first aid room provided by the employer and reported her injury. A Mrs. Vaughan, who was the nurse in charge of this room, filled out a report. After about an hour and a half claimant returned to work and graded cones with her left hand during the remainder of the day. She continued working after the alleged accident, but doing a different type of work which required the use of only her left hand, until September, 1944, when she had to stop work because of her arm.

About a week or ten days after the alleged accident, claimant was sent by the employer to Dr. Byerly who treated her until April 1, 1944, at which time she secured permission to consult her family physician, Dr. Wilcox, who thereafter referred the patient to Dr. Dawson. Dr. Dawson first saw claimant on October 31, 1944, and she has since been under his care. He diagnosed her condition as that of "tennis elbow", while one of the other physicians described her condition as "a traumatic injury to the ulnar nerve" in the right elbow. All these physicians agreed that there was a permanent impairment in the use of the right arm, although disagreeing somewhat as to the extent of the loss of use. Claimant was unable to work from September 23, 1944, to March 18, 1945. On the latter date she returned to work, but was unable to use her right arm, and remained in the employ of Sonoco until October, 1945, when she was dismissed because of the discontinuance by the employer of the type of work claimant was doing.

Appellants' contention that claimant suffered no accidental injury is based on statements claimed to have been made by her subsequent to the date of the alleged accident. Mrs. Vaughan, who was in charge of the first aid room and to whom claimant first reported her injury, testified that claimant told her that the pain in her arm commenced after she started operating the machine and developed gradually. All of the attending physicians testified that claimant gave

them no history of having received an injury on any specific date, although Dr. Byerly testified that claimant's condition could have resulted from "a sudden wrench, twist or jerk". On December 6, 1944, claimant signed, at the request of a representative of the carrier, a statement to the effect that her injury was not caused by an accident but was brought about by a continuous operation of the machine over a period of about ten months. Claimant admitted her signature on this paper but denied knowing that it contained such a statement. She testified that the paper she signed was prepared by this representative and was not read over to her. She positively denied saying that her injury developed gradually and was not caused by an accident.

Several women who at the time of the alleged injury were working near claimant on similar machines testified that they observed claimant holding her arm while on her way to the first aid room and inquired how she had hurt her arm, to which claimant replied that "a terrible pain struck her when she was twisting cones". Several other employees also testified that claimant made similar remarks after returning from the first aid room.

The evidence is undisputed, and it is apparently conceded, that claimant's injury arose out of and in the course of her employment. Appellants' contention is that the injury did not result from an accident but developed over a period of time from the continuous operation of this machine. Claimant's testimony, if believed by the Industrial Commission, was sufficient to show an "injury by accident" under the numerous decisions of this Court defining that phrase. *Next of Kin of Clinton Cole v. Anderson Cotton Mills et al.*, 191 S. C. 458, 4 S. E. (2d) 908; *Strawhorn v. J. A. Chapman Construction Co. et al.*, 202 S. C. 43, 24 S. E. (2d) 116; *Willis et al. v. Aiken County*, 203 S. C. 96, 26 S. E. (2d) 313; *Lanford v. Clinton Cotton Mills et al.*, 204 S. C. 423, 30 S. E. (2d) 36. Her testimony is corroborated by that of the other employees to whom claimant related the manner of her injury immediately after the alleged occur-

rence. But it is sharply contradicted by testimony of other witnesses to the effect that claimant told them that her injury developed gradually and did not result from an accident. However, it was the province of the triers of the facts to pass upon the credibility of this testimony. We are not at liberty to do so.

The other question, relating to the failure to file a claim with the Industrial Commission within one year after the accident, is more difficult. It is conceded that claimant filed no claim with the Industrial Commission until October 19, 1945, approximately twenty months after the alleged accident, at which time she wrote a letter to the Commission demanding compensation. The Industrial Commission found that the conduct of appellants was such as to estop them from invoking the one-year limitation for filing claims. This finding was sustained by the Circuit Judge, who also held that the reports made by appellants to the Commission within one year after the alleged accident were sufficient to constitute a filing of the claim. However, in view of our conclusion on the question of estoppel, it is unnecessary to determine the correctness of the second ground assigned by the Circuit Judge in support of his holding that the claim was not barred by the one-year limitation.

Shortly after the alleged accident the nurse in charge of the first aid room filled out a report on a form prescribed by the Commission for the first report of an injury. This report was signed by her and the employer's Safety Engineer and forwarded to the Commission. In addition to workmen's compensation insurance, Sonoco carried a policy with the Equitable Life Assurance Society which provided for a certain indemnity to the employees in the event of illness and also insured them against such accidents as were not compensable under the Workmen's Compensation Act. Two-thirds of the cost of this insurance was paid by the employees and one-third by Sonoco. A Mr. Marshall was employed by Sonoco as "Employee Insurance Manager". When an accident occurred it was he who determined whether claim

should be made for workmen's compensation or whether the claim should be filed under the Equitable policy. All claims under the Equitable policy were handled by him. In April, 1944, he received a report of claimant's injury from Dr. Wilcox and filed claim under the Equitable policy. That insurer paid disability compensation covering a period of approximately five weeks which amounted to $51.40. Mr. Marshall testified that he later received a report from Dr. Dawson from which he concluded that the claim did not properly come under the Equitable policy and referred claimant to a Mr. DuBose, Safety Director of Sonoco, who handled all claims under the Workmen's Compensation Act. Mr. Marshall further testified that in December, 1944, the carrier denied liability and he so advised the claimant, whereupon he again filed claim under the Equitable policy. Some time later the Equitable Life forwarded a check for $78.57. According to Marshall's testimony, claimant refused to accept this check "until something definite was settled". He stated that he advised claimant not to accept the check if "she was going to appeal before the Commission for a hearing". Mr Marshall admitted that during the fall of 1944 she came to him several times inquiring why her claim was being delayed. He stated that he had great difficulty in getting claimant to understand the difference between the type of insurance provided by the Equitable policy and that provided under the Workmen's Compensation Act and finally carried her to Mr. DuBose so that he could also explain the difference to her.

Mr. DuBose, Safety Director of Sonoco, who handled all workmen's compensation claims, testified that in November, 1944, he advised claimant by letter that the carrier had denied liability; that thereafter claimant came to see him several times; and that he "told Mrs. Young when the denial came through that she did not have to take that. She could appeal and have a hearing".

Claimant gave the following explanation of her failure to file claim within one year:

"Q. Mrs. Young, had you given the Commission any notice about your claim before that time? (Before her letter of October 19, 1945, to the Commission).

"A. No, sir. They told me at Sonoco, that I was supposed to get a letter from the Commission, and I kept waiting for that letter and when I never did hear from the Commission, that is when I wrote them, and that is why I waited so long before I put in a claim, because they told me at Sonoco to wait until I heard from the Commission, but I never did hear anything."

\* \* \*

"Commr. Duncan: Why did you wait so long to write this letter, more than a year after this accident happened?

"The Witness: Because I was told by Mr. DuBose that I was supposed to receive a letter from the Commission before I put my claim in, and I was waiting for that letter.

"Commr. Duncan: Did you talk to any of the officials at Sonoco while you were out?

"The Witness: During the time I was out I went to Sonoco Products Company and talked with Mr. DuBose about this claim and I told him I wanted to put in a claim for this accident and he told me I was not entitled to any compensation and that if I was, there would be a settlement made, and it would not do any good to make a claim, for he said I was not entitled to any compensation, and he did not give me no Commission address or nothing, and I was not advised of nothing, and was never given no book to read about compensation, and I didn't know any better."

\* \* \*

"Q. Why did you write that letter?

"A. Well, I hadn't never put in no claim and I hadn't got nothing, and I had to do something, and I could not get any information from Sonoco, I actually got information about it from a colored boy, he had a book that he let me have and I read it and then I decided I had better do something about it myself. \* \* \* I was supposed to get advice, and I asked them about what to do and he didn't tell

me to do anything but wait for a letter from the Comm s-sion, and he did not give me your address.

"Commr. Duncan: How did you get the Commission's address?

"A. A colored boy on the place had an accident and they had give him a book, and he had kept the book and he give it to me and I read that little book and found out where to write you."

The foregoing testimony by claimant was corroborated by two of her relatives who testified that they accompanied her on several trips to the office of Mr. DuBose during December, 1944, and January, 1945. Both DuBose and Marshall denied doing or saying anything calculated to mislead claimant or to induce her to postpone filing a claim.

On December 18, .1944, the carrier filed with the Commission a supplemental report of injury on the form prescribed by the Commission. This report was dated November 20, 1944, and signed by the Safety Engineer of Sonoco. Accompanying this report was the following letter to the Commission by the Branch Claim Manager of the carrier:

"We attach the assured's Supplemental Report indicating the plaintiff in this case began losing time September 25, 1944. We have completed our investigation and it is our opinion this trouble arose over a long period of time and did not result from an accident within the meaning of the Compensation Act. We, therefore, respectfully deny liability."

Section 24(a) of the Workmen's Compensation Act, Section 7035-27 (1), Code of 1942, is as follows: "The right to compensation under this Act shall be forever barred unless a claim is filed with the Industrial Commission within one year after the accident, and if death results from the accident, unless a claim be filed with the Commission within one year thereafter".

The purpose of the foregoing limitation is to protect "employers and insurance carriers in resisting long delayed demands". *Edge v. Dunean Mills et al.*, 202 S. C. 189, 24 S. E. (2d) 268. It has been held that this section "should be given a liberal construction". *Gold v. Moragne et al.*, 202 S. C. 281, 24 S. E. (2d) 491. Some courts take the view that the requirement as to filing a claim within a specified time is jurisdictional and a condition on the right to compensation which cannot be waived. However, we have not done so. It is stated in *King v. Wesner*, 198 S. C. 49, 16 S. E. (2d) 289, that the foregoing section of the Act "is more a limitation than a procedural requirement". We have held "that there may be, under certain circumstances, a waiver on the part of the employer or the insurance carrier of the filing of a claim in any form whatever". *Gold v. Moragne et al., supra.* We have further held that under some circumstances the employer and carrier may be estopped from taking advantage of the employee's failure to formally file a claim within the one-year limitation. *Lowther v. Standard Oil Co. of N. J.*, 206 S. C. 286, 33 S. E. (2d) 889. In *Meyers v. Lehigh Valley Transp. Co. et al.*, .... Pa. Super. ...., 10 A. (2d) 879, the Court said: "The conduct of defendant and its insurance carrier may be such as to estop them from presenting the statutory limitation as a defense in bar of the claim for compensation, if the effect of such conduct was to mislead or deceive claimant, whether intentionally or not, and induce him to withhold or postpone filing his claim petition until more than a year had elapsed from the occurrence of the accident."

Ordinarily we are not empowered to review findings of fact by the Industrial Commission when supported by competent evidence. Whether this rule should apply to appeals involving equitable principles such as estoppel is an important question not raised by the exceptions and one that we shall not now undertake to determine. Conceding, without deciding, that appellants are entitled to the benefit of the general rule applicable to appeals in equity

cases, we cannot, after carefully reviewing this record, say that the Commission's findings of fact as to estoppel, concurred in by the Circuit Judge, are against the clear preponderance of the evidence.

This case involved unusual circumstances and it is easy to perceive how the ordinary employee may have been confused as to the party against whom claim should be filed. Evidently for some time after the alleged accident it was not clear even in Mr. Marshall's mind whether the claim should be under the Equitable policy or filed against the carrier under the Workmen's Compensation Act. He states that he had great difficulty in getting claimant to understand the difference between the liabilities of the two insurers. Although claimant reported an injury which was promptly investigated, it was approximately nine months before the carrier denied liability. There then remained only three months in which claim could be filed with the Industrial Commission and during this period claimant continued to seek advice from Messrs. Marshall and DuBose. There was no obligation resting upon Sonoco to provide assistance to employees in filing claims but having done so, the employer is not in a position to complain of any action taken or omitted as a reasonable result of the advice thus given. While under all the circumstances we are not satisfied that there was an intention by this employer to mislead claimant, a reasonable inference can be drawn that such was the effect. At least it cannot be said that such a conclusion is against the clear preponderance of the evidence.

The fact that claimant may have been unaware of of the requirement as to filing a claim within one year furnishes no legal excuse for not filing her claim. She is constructively charged with such knowledge. But her inexperience in these matters and limited education were facts which could be properly taken into consideration in determining whether she was actually misled by the conduct and acts of the employer. In matters of this kind the counter-equities of the parties are entitled to due consid-

eration. Although no claim was filed by claimant within one year after the alleged accident, it appears that within that period the employer and carrier made a complete investigation of the facts and concluded that there was no liability.

We have carefully considered the case of *Edge v. Dunean Mills et al., supra* (202 S. C. 189, 24 S. E. (2d) 268), the case so strongly relied upon by appellants, and find nothing therein in conflict with the views herein expressed.

Judgment affirmed.

BAKER, CJ., and FISHBURNE, STUKES and TAYLOR, JJ., concur.