16164

BURNHART v. DUNEAN MILLS *ET AL.*
(51 S. E. (2d) 877)

*Messrs. Mann & Arnold,* of Greenville, *for Appellants,*

*Mr. J. Robert Martin,* of Greenville, *for Respondent,*

January 4, 1949.

OxNER, Justice.

This is an appeal by the employer and carrier from an order of the Circuit Court affirming an award of the Industrial Commission in favor of claimant, Mrs. Camilla Burnhart. The only question for determination is whether the claim is barred by the following limitation contained in Section 7035-27 of the Code of 1942: "The right to compensation under this article shall be forever barred unless a claim is filed with the industrial commission within one year after the accident   *   *   *."

The following facts may be reasonably inferred from the testimony offered by claimant: About eleven o'clock on Thursday night, December 28, 1944, while engaged in her work at the Dunean Mills, claimant, who was then about thirty years of age, fell and injured her back. This produced a numbing effect but claimant did not regard the injury as a serious one and continued to work that night until the regular quitting time of her shift about an hour later. She worked on Friday and Saturday. On Sunday the numbness which had continued from the time of the accident was succeeded by a pain in the region of her injury. On Monday (January 1, 1945), she reported the accident to her overseer. He asked her to continue working, which she did

although still suffering pain from her injury. Several months later her father called on the superintendent and advised him of the injury. He stated that he had not heard anything about it and would look into the matter. Shortly thereafter claimant was sent to the first aid room where she was given heat treatments with an electric lamp. During the latter part of March she was requested to go to the office of Dr. Northrop, a Greenville physician. Here she received a "hot pad treatment" daily for one week but did not improve. Some time during May she suffered a nervous collapse and remained at home for a period of seven or eight weeks. She was attended by Dr. Northrop who stated, according to claimant, that her condition was caused by the accident. She returned to work during the latter part of July, at which time she and her father called on the superintendent of the mill and requested that she be given lighter work. This was done. After resuming her work she inquired of the service manager of the mill whether she would be paid for the time she lost, to which he replied: "I don't know." She also said that the superintendent stated to her that there was a check at the office but when she went there, no such check could be found.

On December 23, 1945, approximately one year after the fall in the mill, claimant was in an automobile accident in the city of Greenville. Three or four ribs were injured and she remained in the hospital for about a week.

Claimant continued to work at various jobs in the mill until September, 1946, when she was told that the mill was going to discontinue using the type of machine upon which she was working. She says she was then given a sweeping job which she was unable to do and when the mill refused to give her any other position, she had to quit on September 11th. It is undisputed that from December 28, 1944, the date of the alleged accident, until September 11, 1946, when claimant ceased working at the mill, the only time which she lost was seven weeks in the summer of 1945 when the alleged

nervous breakdown occurred. Except during the time she worked as a spare hand, her earnings during this period were at least as much as those received prior to the accident.

After leaving the mill claimant says she tried to obtain other employment but was unsuccessful. She then applied for and received unemployment compensation. In May, 1947, her attorney wrote a letter to the Industrial Commission requesting that a date be set for the hearing of her case. Several weeks later she was examined by a physician at Pickens, S. C. From this examination and the history given him by the claimant, this physician was of the opinion that she had "a ruptured intervertebral disc in the lumbar region of the back." He stated that the injury was a permanent one and that claimant would be "handicapped 50%" in doing manual labor. Although claimant says that the pain caused by the injury received in the mill has never ceased, after being treated by Dr. Northrop during the summer of 1945 no physician was consulted about this injury until the examination at Pickens in June, 1947.

The superintendent of the mill denied stating to claimant that there was a check for her at the mill office. He testified that her father came to see him several times complaining that his daughter was suffering and he suggested that he see the service manager. He said he later told the overseer to give claimant a lighter job. The service manager testified that he was informed by Dr. Northrop that claimant's condition was due to overweight and not to an injury and that claimant told him she had never been able to work in a mill during the summer. He said after returning to work during the summer of 1945, claimant asked him about compensation for the time she had lost and he told her that Dr. Northrop had never made any decision as to whether her case was compensable. The overseer emphatically denied that claimant reported any injury to him on January 1, 1945. He said that the matter was not mentioned to him by her until March

11, 1945, at which time he immediately made a formal report.

On March 29, 1945, the Industrial Commission received from the employer's service manager a report dated March 20, 1945, stating that claimant sustained an accident on December 28, 1944, which was first reported to the employer on March 11, 1945, that the employee had returned to work, and there was no disability. On March 28, 1945, Dr. Northrop made a report which was received by the Industrial Commission on April 7, 1945. He stated in this report that he first treated the claimant on March 26, 1945, that further treatment of from five to seven days would be necessary, and that there would be no loss of time. The next report filed with the Industrial Commission was by the employer on October 17, 1945, in which it was stated that no compensation had been paid. On the same date the Industrial Commission received the following letter from the carrier's adjuster:

"We have your request for Certificate of Termination of Disability, form 14, and closing report, No. 18, on this case.

"We have never accepted this case as compensable as our investigation revealed that this claimant alleges she was hurt on Dec. 29th but made no report of same until March 11th. She lost no time except that she would be out a day and half or two days each month and then she stayed out several weeks during the summer but she admitted that she never has been able to work during the summer months and this, of course, is not due to the alleged accident.

"We are attaching 60 day report which shows no payment but, of course, the file is still open."

On February 19, 1946, the Industrial Commission requested the carrier to forward "copy of 60 day report completely filled out and all other forms necessary to bring this file up to date," to which the carrier replied on February 21st, as follows:

"We are attaching closing report form 18 which shows no payment on the above case.

"Liability was denied to this claimant as investigation shows that she had no disability as a result of any accident."

The report attached to this letter stated that it closed the case.

The Industrial Commission, after stating that the employer and carrier were not prejudiced by the delay in filing the claim, held that they had waived the statutory limitation and under the circumstances were also estopped from invoking it. Claimant was awarded temporary total disability benefits and also "compensation for fifty per cent disability of a general nature." On appeal by the carrier and employer, this award was affirmed.

It is undisputed that no claim was filed with the Industrial Commission until May, 1947, almost two and a half years after the accident. It is true that the employer had knowledge of the injury but the Act not only requires that the employee give notice to the employer of the accident, 7035-25 and 7035-26 of the 1942 Code, but also that any claim for compensation be made within one year thereafter. The reports heretofore mentioned which were filed with the Industrial Commission by appellants within one year of the accident do not constitute the filing of a claim as required by statute. The employer is required to make these reports even though no claim for benefits has been made. If such reports were always sufficient to constitute the filing of a claim, it would never be necessary for the employee to comply with the statutory requirement as to filing claims within one year after the accident. It seems clear that respondent is barred by the one year limitation unless the circumstances are such as to establish waiver or estoppel. We do not think the evidence is sufficient to avoid application of the statute on either theory. The facts and circumstances relied upon to establish estoppel and waiver will now be briefly reviewed:

(1) It is said that claimant was told after returning to work in the summer of 1945 that there was a check for her at the office, thereby leading her to believe that she would be paid for the seven weeks lost from her work, but any such impression must have been dispelled when shortly thereafter she was informed at the office that there was no check for her. Claimant says that she was told by some lady in the office that "there was papers that I'd have to sign". The nature of the "papers" is not disclosed. Claimant never returned to sign any paper, nor did she further pursue the matter.

(2) It is suggested that she was given no definite answer to her request for compensation. In response to this request the service manager stated, according to claimant's testimony, that he did not know whether she would be paid compensation. He testified that he told her that he had not been advised by Dr. Northrop whether her claim was compensable. It is conceded that thereafter claimant worked in the mill for more than a year and there is no showing that during this period she ever made any further inquiry about compensation. Apparently she abandoned the idea of seeking compensation for the seven weeks lost in the summer of 1945, but whether she did or not, there is no reasonable basis for concluding that during all of this time she was awaiting a determination by her employer as to whether her claim was compensable. There is no evidence that the employer ever admitted liability. The claimant could not have reasonably concluded from the circumstances mentioned that she would be compensated, nor were they sufficient to induce her to withhold or postpone filing her claim.

(3) It is claimed that the employer and carrier made misleading statements in their reports to the Industrial Commission. We find no basis for this assertion. In the first report, made in March, 1945, it was stated that there was no disability. None had appeared at that time and claimant had lost no time from work. The next report

was in October, 1945. At the time this report was made the carrier's adjuster wrote a letter informing the Commission that claimant had lost time from her work during the summer but stated this was not due to the accident and that the case had never been accepted as compensable. This letter was in effect a denial of liability and was written several months before the time for filing a claim had elapsed. The fact that its contents were not communicated by the Commission to the claimant is no fault of appellants. We know of no rule or statute requiring the employer to give notice to the claimant when reporting a denial of liability to the Commission. There was no effort to conceal the facts from the Industrial Commission. It is true that it was stated in this letter that "the file is still open", but this was proper since at this time the period for filing a claim had not elapsed.

(4) The circumstance most strongly relied upon is the fact that claimant was given lighter work. According to her testimony and that of her father, the superintendent of the mill stated "because of the injury she received in the fall, they would have to give her lighter work, and they'd have to give her regular work." From this testimony the Industrial Commission reached the following conclusion: "The employer agreed to keep claimant in its employment and at lighter work, and thereby led her to believe that employer had assumed full responsibility for injury received. It therefore appears, and Commission holds that employer assumed the liability and undertook to administer the law of furnishing medical attention and employment at such work as claimant was able to perform—just what the Commission itself would have done on hearing of the case."

The Commission found that claimant was given lighter work immediately after reporting the accident on January 1, 1945. While this fact is immaterial, it is rather clear from the testimony of claimant's father and her own testimony on cross-examination that she was not promised or given lighter

work until after she returned to the mill in the summer of 1945.

We do not think the evidence justifies the conclusion reached by the Commission. It does not reasonably warrant the inference that claimant was to be given lighter work for an indefinite period of time or that such was done as partial compensation for the injury sustained. If there was any such agreement as found by the Commission, it is singular that claimant made no complaint about the breach of it when she ceased working at the mill about a year later and that no such complaint was ever registered until the hearing before the single commissioner. There is no contention that claimant was given lighter work upon condition that she would not file any claim for disability. We are unable to find any testimony tending to show any effort on the part of the employer or carrier to compromise or settle this claim. Claimant's own testimony that when she inquired of the service manager whether she would be paid for the time lost from her work, he replied "I don't know," negatives any inference that there was any recognition of liability on the part of the employer. The suggestion is made that the Commission was deceived by the statement of the employer in October, 1945, that no compensation had been paid claimant. The facts justified this statement. The wages received by claimant after the accident were paid, not on account of her injury, but solely as remuneration for services rendered, and, except when she was working as a spare hand, amounted to as much as she previously received. It must be remembered that the only compensation requested by claimant at this time was for the seven weeks lost during the summer of 1945. There was no suggestion then that she was suffering from a serious permanent disability. The latter claim was not made until shortly before these proceedings were commenced.

It will also be noted that after leaving the Dunean Mills, claimant applied for and received Unemployment Compen-

sation. An employee is not entitled to such compensation unless he certifies that he is able to work and available for work.

We are not in accord with the conclusion of the Commission and the Circuit Judge that appellants were not prejudiced by the delay in filing a claim and their further conclusion that the "equities" of the case are with claimant. Dr. Northrop, the only physician who attended claimant after her injury and who apparently concluded that it was only a minor one, died in January, 1947. The fact that his testimony cannot now be had vitally affects the rights of appellants. Claimant was injured in an automobile accident in December, 1945. The extent, if any, to which this accident contributed to her present condition can now only be determined with much difficulty. The major portion of the award is for a condition which was not discovered until June, 1947, or just before the commencement of this action and more than two years after the accident.

The two cases principally relied upon by claimant are *Young v. Sonoco Products Co. et al.,* 210 S. C. 146, 41 S. E. (2d) 860, and *Lowther v. Standard Oil Co. of New Jersey,* 206 S. C. 286, 33 S. E. (2d) 889. In each of these cases it was held that the conduct of the employer was such as to estop it from invoking the one year limitation for filing claims. The *Young case* involved unusual circumstances. In addition to workmen's compensation insurance, the employer carried a policy with a life insurance company which provided for a certain indemnity to the employees in the event of illness and also insured them against such accidents as were not compensable under the Workmen's Compensation Act. When an accident occurred it was the employer's insurance manager who determined whether a claim should be made for workmen's compensation or whether the claim should be filed under the life policy. He and the safety director of the employer undertook to advise the employees and assist them in filing claims.

There was evidence tending to show that the delay in filing the claim was due to the advice given the injured employee by these officials. The employee testified that she was told not to file a claim and wait until she received a letter from the Industrial Commission. The facts in that case are quite distinguishable from those in the instant case. Here we find no evidence reasonably calculated to mislead the claimant. In the *Lowther case* the employer and employee entered into an agreement as to compensation on the standard form provided by the Industrial Commission. The employer forwarded this agreement to the Commission and undertook to act for and in behalf of the employee in handling the claim. An entirely different situation is presented in the instant case.

In *Edge v. Dunean Mills et al.,* 202 S. C. 189, 24 S. E. (2d) 268, claimant sustained an injury on July 31, 1937. After losing eighteen days from work, he returned to the mill on August 16, 1937, where he continued working for about a year and a half. The insurance carrier paid the hospital and medical bills but no compensation. On December 15, 1937, the carrier advised the Commission that it regarded the case as non-compensable and denied liability. On December 2, 1938, claimant, or someone in his behalf, wrote a letter to the Industrial Commission stating that he had never been paid anything for loss of time. No formal claim was filed until April, 1941. It was held that the claim for compensation was barred because not filed within one year after the accident. It will be noted in this case that the employer had knowledge of the accident, filed the usual reports with the Commission, and paid the medical and hospital bills, but these circumstances were not regarded as sufficient to constitute the filing of a claim.

In *Wilson v. E. H. Clement Co. et al.,* 207 N. C. 541, 177 S. E. 797, and *Lilly v. Belk Bros.,* 210 N. C. 735, 188 S. E. 319, it was held that the claims were barred because not filed within the statutory period, although the circum-

stances supporting waiver and estoppel were much stronger than those presented in the instant case.

Finally, claimant contends that she was entitled to notice of denial of liability and a hearing on her claim and cites in support of this contention *Halks v. Rust Engineering Co. et al.*, 208 S. C. 39, 36 S. E. (2d) 852, where it was held that a claim for compensation properly pending before the Industrial Commission should not be dismissed without notice and an opportunity afforded for a hearing. This and other like decisions presuppose a valid claim pending before the Commission. Here the claim was not filed until after the expiration of the one-year limitation.

The judgment appealed from is reversed and the case is remanded for entry of judgment in favor of appellants.

BAKER, C. J., and FISHBURNE, STUKES, and TAYLOR, JJ., concur.