17299

HENRY DU PONT, Respondent, v. E. I. DU PONT DE NEMOURS
AND COMPANY, INC., and EMPLOYERS MUTUAL LIA-
BILITY INSURANCE CO., Appellants.

(98 S. E. (2d) 528)

*Messrs. Whaley & McCutchen,* and *Hoover C. Blanton,*
of Columbia, *for Appellants,*

D. N. Rivers, Esq., of Ridgeland, *for Respondent,*

May 31, 1957.

LEGGE, Justice.

In March, 1954, respondent filed with South Carolina Industrial Commission a claim for benefits under the Workmen's Compensation Law because of an injury claimed to have been sustained by him on February 22, 1952, while in the employ of the appellant duPont Company. The hearing commissioner's denial of the claim because of failure to file it within one year after the accident (Code 1952, Section 72-303) was reversed by a majority of the commission, who

held that the appellant was estopped to assert the statutory bar. The circuit court affirmed, and this appeal followed.

Respondent, an ignorant colored man twenty-four years of age, testified that on February 22, 1952, in the course of his employment, a compressed-air tamp that he was using "jumped" and struck the top of his left foot causing a bruise and abrasion; that he was promptly taken to appellant's first aid station, where his injury was treated, that upon being discharged from first aid that night he was taken to his home in one of appellant's vehicles and told to see his own physician; that next day he went to his physician, Dr. Ryan, who told him to bathe the injured foot in warm water; and that he returned to work a week later, in the meantime having seen Dr. Ryan almost every day. He testified further that his foot became progressively worse and finally got in such condition that he had to quit work; and that when he left he told his foreman so, to which the latter replied: "The job is supposed to take care of you". He did not remember the foreman's name, and although he testified at first that he continued to work for appellant for four months after his return, it is apparent from consideration of his testimony in connection with that of Dr. Ryan and with appellant's records that his employment with appellant terminated on March 28, 1952; that for some three or four months after that date he worked for a contractor "shoveling sand"; that thereafter he worked at intervals for Good Hope Plantation; that during all this time the condition of his foot became progressively worse; and that finally, in January, 1954, the foot had to be amputated.

Dr. Ryan testified on respondent's behalf as follows:

Respondent was one of a large family that worked for Good Hope Plantation, near Ridgeland; and Dr. Ryan, who rendered professional services under contract with the Plantation, had been the family physician for many years. He had never before treated respondent for any disease of, or injury to, his foot. For ordinary services Dr. Ryan's bill was paid by the Plantation, and he kept no record of

such cases and had none showing just when respondent had first come to him after the accident of February 22, 1952; but according to his recollection it was early in 1953. At that time respondent had on his foot a swelling "about half the size of a golf ball". Dr. Ryan was of the opinion that an abscess was developing, and he advised respondent to soak the foot in hot salt water. He saw no more of respondent until eight or ten months later, *i. e.*, early in January, 1954, when respondent again came to his office. This time the foot was greatly swollen, the lump being "about the size of a good sized orange"; and Dr. Ryan realized that it was probably a malignant tumor. He and Dr. Wilson, of Savannah, removed it on January 12, 1954, and sent it, for pathological analysis, to the Howard Laboratories in Savannah, which promptly reported that it was cancerous. Respondent's chest was then *x*-rayed to determine whether metastasis from the foot to the lungs had taken place; and, no evidence of metastasis appearing, the leg was, on January 19, 1954, amputated about five or six inches below the knee.

Appellant's records show the following:

The accident occurred on Friday, February 22, 1952, but was not reported to appellant's medical department until the following Monday, February 25. The report of that date shows that respondent's left foot was slightly swollen, and that he also complained of headache; and that the treatment given for the foot injury was hot magnesium sulfate soaks and analgesic balm, with bandage, and for the headache, an aspirin compound. Further entries show that the foot was similarly treated on February 29 and March 6, and respondent discharged on March 10. The accident was included in appellant's February, 1952, report to the Industrial Commission of minor injuries. Appellant's medical records show that on March 20 respondent again came to the medical department, having some swelling in the back of his head, painful to pressure, that respondent thought came from his foot, and that he was given

aspirin and advised to see his doctor; that on March 21 he complained of headache, but had no fever, and was given aspirin; and that on March 27 he again appeared and stated that he had been absent on March 24, 25 and 26 because of illness not connected with his employment. On March 28, 1954, he voluntarily terminated his employment, stating, according to appellant's records, that he was in good health and was leaving appellant's employ to go back to farming.

Appellant's "minor injury report" of February 25, 1952, indicates that respondent's foreman, who investigated the accident, was J. P. Moore, who did not testify. Respondent's counsel properly concedes that the claim was not filed with the Commission until March 3, 1954, more than two years after the accident; and that it is therefore barred by Section 72-303 unless appellant's conduct since the accident has been such that it is now estopped to claim the protection of the statute. The primary issue for our determination, therefore, is whether the evidence, as to which there was no substantial conflict, was sufficient to warrant the finding of estoppel.

Respondent testified that when he terminated his employment with appellant he told his foreman that he was leaving because his injured foot was in such condition that he could no longer work, and that the foreman replied: "The job is supposed to take care of you." Thereafter, according to respondent's testimony, he "listened for it", but heard nothing further. The finding of estoppel is based solely upon this statement of the foreman. There is no suggestion in the record that after respondent had left its employ appellant, by communication or conduct, did anything that might have misled respondent or lulled him into the belief that he need file no claim. Indeed, it is undisputed that there was no communication whatever between the parties. Respondent simply continued, according to his own statement, to "listen." He took a job with a contractor, and gave that up after three or four months, his foot getting progressively

worse all the time; then he worked intermittently at Good Hope Plantation; and finally he went to Dr. Ryan, according to the latter's testimony, early in 1953, or almost a year after the accident. Thereafter eight or ten months more elapsed before respondent, who had neither filed a claim nor communicated with appellant, again went to Dr. Ryan, this time with his foot in such condition that amputation was necessary in order to save his life.

The undisputed facts here clearly distinguish this case from *Young v. Sonoco Products Co.,* 210 S. C. 146, 41 S. E. (2d) 860, and *Poole v. E. I. duPont De Nemours & Co.,* 227 S. C. 232, 87 S. E. (2d) 640. Even viewing the foreman's statement as a promise that appellant would "take care of" respondent, and assuming that the latter had the right to, and did, rely upon it, such estoppel as may have been created thereby could continue only for such reasonable length of time as would be sufficient to enable respondent, in the exercise of due diligence, to realize that he could no longer rely upon it. *Duncan v. Gaffney Manufacturing Co.,* 214 S. C. 502, 53 S. E. (2d) 396. In our opinion the evidence was insufficient to warrant the conclusion that the delay of approximately two years in the filing of respondent's claim was the result of justifiable reliance for so long a time upon the foreman's statement before mentioned. The claim was barred by the statute.

Having so concluded, we do not consider the other grounds of appeal.

Reversed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.