## 17646

Hattie Mae CASE, Respondent, v. HERMITAGE COTTON MILLS and American Mutual Liability Insurance Company, Appellants

(113 S. E. (2d) 794)

*Douglas McKay, Jr.* and *McKay, McKay, Black & Walker,* of Columbia, *for Appellants,*

*Messrs. J. Claytor Arrants* and *Murchison, West & Marshall,* of Camden, *for Respondent,*

April 14, 1960.

LEGGE. Justice.

Employer and carrier appeal from a circuit court order affirming the Industrial Commission's award in favor of the claimant, Hattie Mae Case. It is undisputed that no claim on her behalf was filed with the Commission within one year after the accident as required by Section 72-303 of the 1952 Code. The Commission's award and the order affirming it rest upon the finding that the employer was estopped to invoke that statute. The primary question for our determination is whether such finding has any factual support in the record before us.

Section 72-303 reads as follows:

"The right to compensation under this Title shall be forever barred unless a claim is filed with the Commission within one year after the accident and, if death results from the accident, unless a claim be filed with the Commission within one year thereafter. The filing required by this section may be made by registered mail, and such registry within one year after the accident and, if death resulted from the accident, such registry within one year thereafter, shall be sufficient."

The statute is one of limitation, and its requirement is not jurisdictional. *King v. Wesner,* 198 S. C. 49, 16 S. E. (2d) 289; *Hoke v. Cherokee County,* 216 S. C. 376, 58 S. E. (2d) 330. It may be waived, *e. g.,* by failure to invoke it at the appropriate state of the proceeding. *King v. Wesner, supra; Gold v. Moragne,* 202 S. C. 281, 24 S. E. (2d) 491. The employer may be estopped to invoke it if by his conduct he has induced the claimant to believe that the claim is compensable and will be taken care of without its being filed with the Commission within the period limited. *Young v. Sonoco Products Co.,* 210 S. C. 146, 41 S. E. (2d) 860. In the case at bar waiver is not suggested; the issue is estoppel.

The accident occurred on the night of Monday, April 9, 1956. Claimant testified that as she was opening a door near the water-cooler a leather strap that was on the door came off, causing her to be thrown against a post and the water-cooler and thence to the floor. She testified that she worked the rest of her shift that night, and that she worked the following night; and that on the second night after the accident she sent a note to her foreman to the effect that the fall had hurt her "some way" and that she would not be able to work. Next morning she was directed to go to the company's physician, Dr. Brunson; and she went to him on the following Monday, April 16. Between the time of the accident and her visit to Dr. Brunson she suffered profuse and untimely menstruation; and it was of this and concomitant swelling of the abdomen that she complained to him. She did not complain of having injured her back. To quote from her testimony on cross examination:

"Q. Now, were you not at that time when you went to Dr. Brunson, suffering from an unusual period? A. Oh, yes, sir.

"Q. That had started up at an unusual time? A. Yes, sir.

"Q. Now, was that not your sole complaint when you saw Dr. Brunson, that this thing had started up at unusual time and you were worried about it? A. Sure, uh huh.

"Q. Now, at that time you did not complain to Dr. Brunson of hurting your back, did you, Mrs Case? A. No, I did not, I told him I hurt all over I couldn't tell him—and I was swelling, I couldn't tell him where I hurt the worst.

"Q. Where was your swelling, Mrs. Case? A. In my stomach, I couldn't wear my clothes, I couldn't get my clothes up.

"Q. Your abdomen was swelling? A. That's right.

"Q. Did not on that day Dr. Brunson tell you in effect that he felt that your trouble had nothing to do with your accident and that you should see your family physician. A. That's right.

"Q. Dr. Shaw? A. That's right, yes, sir.

"Q. And did you subsequently, a couple of days later, or maybe the next day, go to Dr. Shaw for treatment for an unusual period? A. I did go to Dr. Shaw, yes, sir.

"Q. For this unusual menstruation? A. Yes, sir.

"Q. And did he in fact treat you for that condition for a period of time? A. Yes, sir.

"Q. And did it ultimately clear up, that unusual period that you had? A. Oh, yes. It stopped it.

"Q. Now, did you not later on that year, perhaps around September, return to Dr. Shaw for an illness, do you recall? A. Only with my back. I went back to him and told him that I had stood my back hurting me so long that I needed help.

"Q. Well now, wasn't that occasion early this year, in 1957, in May or June of this year, you went to see him about your back? A. Yes, sir, that had been about eight months since the accident, and when the pain was all over my body, but after that left me my back was still hurting me, and it continued to hurt.

"Q. Now, was not that the first occasion, early this year, that you complained to Dr. Shaw about pain in your back because of your accident? A. Yes, sir, that's true."

Dr. Brunson testified that claimant came to see him on April 16, and stated that on April 9, as the result of a belt breaking on a door, she had been thrown against a post and a water-cooler, striking her right side in the rib region; and that on April 13, four days after the accident, she had pains in the lower abdomen and had begun to menstruate, although she had completed her previous period on March 31. She had a headache on the left side of her head, and stated that she had had migraine headaches on that side every three or four months. She did not complain of pain in the right side, where she had been struck, and his examination of that area revealed no bruise or tenderness. She made no complaint relating to her back; her only complaint was

of pain in the lower abdomen, and of menstruating ahead of time. His examination revealed tenderness in the lower abdomen, and a somewhat elevated blood count, that suggested the possibility of a pelvic infection. As the result of his examination he gave her an antibiotic and told her that he did not think that her condition was the result of her accident at the mill, and that he thought she should see her regular doctor for treatment. He made no examination of her back, and no X-ray was taken. Claimant did not work for the employer thereafter, nor did she return to Dr. Brunson.

Dr. Shaw, claimant's personal physician since 1950, testified as follows:

On June 8, 1955, when she was about five months pregnant, claimant fell from the porch of her home to the ground, a distance of some three feet, landing on her abdomen. He saw her on June 13, at which time she had abdominal pains and low backache and was extremely nervous and upset. Examination revealed that her pregnancy was "all right", and she was kept at rest in bed for some time. Usual prenatal visits followed, the baby was born in the fall of 1955, and Dr. Shaw made his "six weeks' check-up" on December 13, 1955. (The record contains no evidence of low backache between June 13 and December 13, 1955.) After December 13, 1955, Dr. Shaw next saw her on April 18, 1956, at his office. His record showed the following: "Last normal period March 25, 1956. Fell at work April 9, 1956, and period started again April 13, 1956. Still bleeding profusely." There was no complaint of injury to or trouble with her back. He made a pelvic examination and treated her for the menstrual trouble. He next saw her on April 30, 1956, repeated the pelvic examination, "and the patient stated that she felt fine. There was a thick vaginal discharge for which he gave advice and treatment." No record of complaint of backache or back trouble at that time. He next saw her on April 9, 1957. To quote his testimony as to that visit:

"Q. Doctor, what was her complaint on that occasion? A. Pain in her low back, off and on for ten months. That's the patient's—our quotation from the patient; hurts all the time now, very painful. Has spell and feels like she's going to faint and gets nauseated.

"Q. Was that the first time that she ever reported to you the pain in her back, since she fell off the porch? A. That's correct, yes, sir."

On this occasion Dr. Shaw "prescribed the use of a very firm bed, and gave her some medications and advised hot applications and repeated my vaginal examination, which was negative, and asked that I hear from her in a few days as to her progress." He testified that he did not hear from her thereafter.

We do not think that estoppel is reasonably inferable from any of the foregoing testimony. From hers as well as that of Dr. Brunson it is manifest that her visit to him was occasioned by her unusual menstrual condition that had come about within a few days after the accident, and not by any injury to her back of which either she or he knew or had reason to know. Even if we take her statement to him that she "hurt all over" as warranting the inference that he and the employer had thus been put on notice that she had a back injury, there is still no escape from the conclusion that he neither did nor said anything to mislead her into believing that she had a compensable injury and could rely upon her employer to take care of it without her having to file a claim with the Industrial Commission within the statutory period. On the contrary, it is undisputed that Dr. Brunson told her that in his opinion her condition was not the result of her accident, and that she should consult her personal physician; that she then left Dr. Brunson and her employment, and put herself under the care of Dr. Shaw; that to him she complained not of a back injury, but of menstrual trouble, for which he successfully treated her; and that neither Dr. Brunson nor her employer heard from her again until after her counsel had on July 16, 1957, filed a claim for her with the Industrial Commission.

In support of her claim of estoppel, respondent's counsel cite *Young v. Sonoco Products Co.*, 210 S. C. 146, 41 S. E. (2d) 860, and *Poole v. E. I. Du Pont de Nemours & Co.*, 227 S. C. 232, 87 S. E. (2d) 640. In each of those cases we held that the employer's conduct following the claimant's injury had been such as to warrant the inference that the claimant had been thereby led to believe that the employer had assumed responsibility for his injury and that the filing of a claim would be unnecessary. The evidence here warrants no such inference.

The single commissioner, who heard this case on October 7, 1957, issued his opinion and award on January 28, 1959, holding that the claimant was entitled to compensation for total disability for not exceeding 500 weeks commencing with the date of the accident, April 9, 1956, and continuing until such time as the Commission might find her able to go back to gainful employment. One exception raises the point that since there is no evidence to establish claimant's condition after October 7, 1957, the award and the order affirming it are based upon speculation and conjecture to the extent of their finding of total disability and the award of benefits for such disability after that date. Consideration of this exception is rendered unnecessary by our conclusion that the claim is barred by the statute.

Reversed.

STUKES, C. J., and TAYLOR, OXNER and Moss, JJ., concur.