15306

FERGUSON v. STATE HIGHWAY DEPARTMENT

(15 S. E. (2d), 775)

March, 1941.

*Mr. W. K. Charles,* of Greenwood, for appellant,

*Mr. John M. Daniel,* Attorney General, and *Messrs. M. J. Hough* and *T. C. Callison,* Assistants Attorney General, *Mr. L. M. Cantrell* and *Messrs. Robinson & Robinson,* of Columbia, for respondent,

July 29, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

On June 8, 1940, the appellant, Robert Ferguson, filed with the South Carolina Industrial Commission a written notice in which it was alleged that on or about March 7, 1940, while working for the South Carolina Highway Department in clearing a right-of-way, his right eye was cut by a briar, resulting in the loss of the sight of that eye.

The single commissioner, after hearing testimony concerning the alleged accident and the injuries resulting therefrom, on September 4, 1940, filed an opinion in which he held that the injury to the eye was compensable under the Workmen's Compensation Act, Code Supp. 1936, § 7035-1 *et seq.,* and awarded compensation therefor, but refused to award compensation for serious head and facial disfigurement. The full commission upon review confirmed the award for specific loss of the eye, and added $500.00 for serious head and facial disfigurement. Upon appeal to the Circuit Court by the highway department, that Court set aside the award in its entirety and rendered judgment dismissing the claim. The claimant appeals, and the matter now comes before us for review.

Inasmuch as the question is raised by the defendant, that its payroll records show that the claimant was not working for it on March 7, 1940, it will clarify the issues if we first dispose of the question as to what date the alleged accident occurred. The notice of claim filed with the commission fixed the day of the accident as March 7, 1940. However, when the evidence was taken, it appeared that the accident occurred on February 9, 1940. When this conflict as to dates developed, counsel for the appellant moved that the notice be

amended so as to conform to the proof, and this motion was granted, over objection. No grounds of objection were stated, no surprise was shown, and no postponement of the hearing was asked. In fact, the accident was investigated by the highway department a few days after it happened. Therefore, we cannot see that any prejudice was suffered by the defendant.

The lower Court held that the record disclosed no evidence tending to show that the claimant received an injury while working with the defendant on February 9, 1940, but we think an examination of the testimony leads to a contrary inference, and fully sustains the finding of the commission thereabout. For instance, Dr. Tuten, who furnished the only medical testimony, said that Robert Ferguson came to him on February 19, 1940, complaining that a briar had scratched him across the pupil of his eye, and according to his record he first treated the claimant on that day for the eye trouble.

The testimony of Sylvester Mims, a co-employee who witnessed the accident, and the payroll records of the defendant which were introduced in evidence, clearly support the reasonable inference that the injury actually occurred on February 9, 1940, while claimant was an employee of the defendant. Mims ceased to work for the defendant on February 9th, and the accident happened to the claimant on the last day that Mims was so employed. The claimant testified that after the injury to his eye, which occurred on a Friday, he continued to work the following Monday and Tuesday. The payroll records verify this. On Tuesday he reported the accident to his foreman and superior, Mr. Mann, who suggested that he had better see a doctor. Claimant says that he treated the eye himself for several days without success, before seeing Dr. Tuten. This evidence was ample to support the commission's finding on this point.

It occurs to us that the mere inaccuracy of date stated in the written notice filed with the Industrial Commission is of little moment. Our main task here is to determine whether

there was competent evidence to support a finding of fact that the injury to claimant's eye arose out of and in consequence of his employment with the highway department by reason of an accident on or about February 9, 1940.

The evidence presents few controversial features. The alleged injury occurred while the claimant, Sylvester Mims, and other employees were clearing a right-of-way. While claimant was holding down a bush to be cut a briar flew back and cut him in the right eye. This was testified to not only by the claimant but by Mims; it was also testified to by another laborer working close by, who heard the claimant cry out that a briar had cut him in the eye.

Dr. Tuten said that when Ferguson came to him on February 19, 1940, he had a general inflammation of the eye, an ulcer on it, and that he treated it a day or two on the assumption that a briar had scratched the eye, because this was the history Ferguson gave him. The eye did not respond to treatment, and the doctor became suspicious of its condition. He sent a specimen of claimant's blood to Columbia and received a report showing positively that he was suffering from syphilis. The doctor thereafter, for four or five weeks, treated him for this disease, after which claimant refused to continue the treatments because of the disagreeable reactions. In speaking of the inflamed condition of the eye, Dr. Tuten said:

"In that condition you get ulceration and that could come from syphilitic disease of the eye or it could come from trauma, or briar scratch or any force to the eye and a briar scratch could have made an ulcer like that or he could have had the ulcer as a result of the syphilitic disease of the eye * * * . The trauma, plus the syphilis could and did result in that eye, but if only the trauma was responsible, the eye would not be like that * * * . The ulcer could have been the result of an injury in the beginning. The injury could have set it off * * * ."

In a certificate on September 11, 1940, which was not before the hearing commissioner nor before the full com-

mission, the doctor certified that in his judgment the syphilis was entirely responsible for the eye condition, but stated therein that the accident resulted in permanent injury by leaving a scar on the eye.

Testimony. derived from several witnesses including the claimant, further tends to show that he had no defect of any kind in his eye, and suffered no impairment of vision until the injury. Claimant's testimony is that he did not know that he had syphilis, that the eye had never given him any trouble before, and that he had always been able to do a full day's work. There is no dispute that the claimant is permanently blind in his right eye, which has a white spot on the pupil.

The full commission in finding that the injury was compensable also held and found that the white spot on the pupil of the claimant's eye was unsightly and repulsive. Both the hearing commissioner and the full commission had the claimant before them and examined his eye. It does not appear that the claimant personally appeared before the lower Court.

It is held in the Circuit decree that no lay testimony purported to attribute the loss of the eye to a briar scratch, and the lower Court concluded that the loss of sight was due to syphilis. That the claimant was suffering from the disease is not denied. We think there was sufficient evidence before the commission to support the finding that the loss of the eye was contributed to by the briar scratch, in conjunction with the disease.

Proof that the claimant sustained an injury and that it arose out of and in the course of employment may be established by circumstantial as well as by direct evidence where the circumstances surrounding the occurrence of the injury are such as to lead an unprejudiced mind reasonably to infer that it was caused by accident; evidence need not negative all other possible causes of resultant injury in compensation proceedings. *Jeffers v. Manetta Mills,* 190 S. C., 435, 3 S. E. (2d), 489. We think the award was

based upon evidence and logical inferences therefrom, and that it did not rest simply upon surmise or conjecture.

If it be assumed from the medical testimony, as it well may be, that the claimant suffered from syphilis, yet, under the medical testimony the conclusion may reasonably be drawn that there was causal connection between the traumatic injury and the acceleration of the disease, from which he lost his sight. In this view of the case it clearly appears that the briar scratch aggravated, accelerated and lighted up the syphilitic condition, resulting in blindness.

We held in *Cole v. State Highway Department,* 190 S. C., 142, 2 S. E. (2d), 490, that although an injury aggravates a pre-existing condition or disease so that disability is continued for a longer period than would normally result from the injury alone, such disability is nevertheless compensable.

And it is generally held that the aggravation, acceleration, or lighting up of a pre-existing or latent infirmity or weakened physical condition may constitute a disability of such a character as to come within the meaning of Workmen's Compensation Acts, even though the accident would have caused no injury to a perfectly normal, healthy individual. *Baker v. Graniteville Co.,* 197 S. C., 21, 14 S. E. (2d), 367, 71 C. J., Sec. 358, p. 603.

It is contended that the lower Court erred in holding that the claimant was barred from recovery because of his refusal to accept treatment furnished by the employer. And reference is made to Section 25 of the Workmen's Compensation Act.

We think this conclusion of the lower Court grows out of a misconception of the evidence. It may be said in passing that it was not an issue either before the hearing commissioner or the full commission. The evidence tends to show that when the plaintiff first received the eye injury he regarded it lightly and attempted to treat it himself. On the third day serious inflammation appeared; he reported the accident to his foreman, who casually suggested that a doctor

be consulted. The foreman named no particular doctor, nor did he intimate that the highway department would bear the expense of the medical treatment. Certainly it may be concluded from Dr. Tuten's testimony that he looked solely to the plaintiff for the payment of his bill. After the doctor had treated him four or five weeks, the claimant refused to proceed further with the treatment. The doctor testified that he would not feel justified in resuming treatment of the defendant, "unless he pays me." It may reasonably be inferred that the employer did not provide medical treatment, nor was it ordered by the Industrial Commission. The facts do not bring the case within Section 25 of the Workmen's Compensation Act so as to bar the employee.

Was the claimant entitled to compensation for serious facial or head disfigurement?

In *Poole v. Saxon Mills,* 192 S. C., 339, 6 S. E. (2d), 761, 764, the word "serious," used in the connection in which it is now being considered, is said to be: "Used in the sense that the disfigurement should be much more than slight, and partaking of permanency." And "disfigurement" is defined as "that which impairs or injuries the beauty, symmetry, or appearance of a person or thing; that which renders unslightly, misshapen, or imperfect, or deforms in some manner."

The right to compensation for serious facial or head disfigurement is not dependent on diminution of earning capacity, as in serious bodily disfigurement. If the condition exists, compensation under the Act is mandatory.

The appellant was present in person before the full commission, and that body examined his eye and observed his appearance; and as already stated held that the white spot on the pupil of the eye was unsightly and repulsive.

We are not in position to substitute our judgment for that of the commission where there is any competent evi-

dence for it to pass on. In our opinion there was such evidence and its sufficiency was for the commission.

We think that the findings of fact and the award made by the commission must be affirmed, and the judgment of the Circuit Court reversed.

Judgment reversed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and STUKES and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.