15921

HOLLY v. SPARTAN GRAIN & MILL CO. *ET AL.*
(42 S. E. (2d) 59)

*Messrs. Sloan & Sloan,* of Columbia, for Appellants, cite:

*Mr. C. Yates Brown,* of Spartanburg, and *Messrs. Blease & Saint-Amand,* of Newberry, for Respondent.

*Messrs. Sloan & Sloan,* of Columbia, for Appellants, in reply, cite:

March 3, 1947.

FISHBURNE, AJ.: This appeal involves a maximum award of $6,000.00 made by the Industrial Commission and affirmed by the circuit court in favor of Roland Holly, the only child and heir-at-law of Roscoe Holly.

Roscoe Holly, an employee of Spartan Grain & Mill Company, located in or near Newberry, died of uremic poisoning or Bright's Disease in the Spartanburg General Hospital at Spartanburg on May 1, 1945. His son, the claimant, sought compensation on the ground that although the primary cause of his death was a pre-existing disease, yet this disease was aggravated and accelerated by an accidental fall arising out of and in the course of his employment.

The defendants have appealed from the judgment of the lower court upon two grounds: first, that the accidental injury to the employee did not arise out of his employment; and, second, that there is no basis in the evidence for the finding of a causal connection between the accidental injury and the subsequent death of the employee.

The deceased, fifty-four years of age, was working in the manufacturing feed plant of his employer on the morning of April 17, 1945, when he received the injuries complained

of. He was employed as a mechanic, and had been working for this company continuously for more than three years prior to his death. His duties required him to repair and oil the motors in the mill, one of which was located near the ceiling on the second floor of the building. This particular motor was reached by ascending a ladder to the height of five or six feet, and then walking on a plank called a "catwalk", which extended over an open bin about eight feet deep.

He checked in for work on the morning of April 17th about 7:30 o'clock, and proceeded to oil the motor in question. While engaged in this work, or when walking over the catwalk to reach the motor, he fell into the bin beneath him. No one actually saw him fall, but a fellow employee in an adjoining room heard the noise of the fall and heard him call for assistance in getting out. Two of his co-laborers went to the top of the bin and discovered him in a half-standing position attempting to climb out, but he was unable to do so unassisted due to the slippery condition of the bin. They reached down and pulled him back upon the catwalk, and from this position he at once resumed his work of oiling the motor. This catwalk was seven and a half inches in width and two inches thick.

Within a very short time, presumably in less than an hour, he walked without assistance across the plank over the bin and down the ladder to the main floor, and complained that he was sick. Whereupon he was sent by his employer to the company doctor in Newberry. He was assisted to an automobile by one of his co-laborers, who went with him to Dr Senn's office.

Dr. Senn was told by the deceased and the laborer who accompanied him, of the accidental fall, and was informed that the accident had just happened. He examined the deceased for physical injuries, and found a bruise or the indication of an injury to the right hip. Dr. Senn testified: "The skin was cut off a place about the size of a fifty-cents

piece. The hip, the whole hip had been hit against something." And he also stated in a note or report made by him which was read into the record: "Roscoe Holly had a fall on pelvis, fell 15 feet on the 17th. X-ray did not show any fracture, but did show large stag horn calculus in right kidney. He also had hypertension and was badly shocked by the fall."

Upon his return from Dr. Senn's office, the deceased took to his bed and grew progressively worse. He was seen by Dr. Senn the following morning, who could not account for his serious condition as arising from his physical injury. It was then that he had the x-ray made, and discovered therefrom the big stone in the right kidney which practically filled up the cavity. The autopsy report showed not only this large stone in the right kidney, but also that there was a stone in the left kidney, or in the tube leading to the bladder which partially blocked passage.

On April 24th Roscoe Holly, who had steadily grown worse, became semi-conscious, and was taken to the Spartanburg General Hospital on the 27th. He remained in this coma or comatose state until his death on May 1st.

The company's medical witnesses who attended Roscoe Holly in Spartanburg, Drs. Hendricks, Saye and Shirey, testified on direct examination that the deceased had chronic Bright's Disease, and other related complications leading to uremic poisoning, which was the cause of his death. And further, that this fatal disease was in no way related to or aggravated by the fall on April 17th. The Spartanburg physicians expressed surprise that one so diseased could have lived as long as he did.

However, all of the doctors admitted under examination that the fall suffered by the deceased could have contributed to the sudden onset or aggravation of the disease: Dr. Senn stating that in general any medical testimony is partly conjecture, based upon past experience and study. He expressed the opinion that the kidney condition had been coming on for quite a long time, and that the fall of the deceased into

the bin was coincidental, or probably precipitated an attack. He qualified this, however, by the further statement that in his condition, the deceased could have had the attack even if he had not suffered a fall.

The medical experts, other than Dr. Hendricks, would not affirm or deny that the accidental fall hastened the death of the deceased. Dr. Hendricks testified in part as follows : ·

"Q. Doctor, a man who was in the condition that you have testified you found this man in, if he had fallen some ten or twelve feet, wouldn't that tend to aggravate or accelerate the malady you say he had?

"A. Certainly a fall of ten or twelve feet would shock a normal man, much less a person like him.

"Q. And would tend to aggravate any malady he had?

"A. Yes, I will have to say that it would."

And later in his examination this testimony was given.

"Q. But would you say that a man in his condition, that a fall of ten or twelve feet would aggravate or accelerate any malady which he might have had? It would shorten his life?

"A. Yes, sir; you have to say that it would tend to shorten whatever life he might have; if it was severe enough."

We find here, according to the record, a man who prior to his accidental fall, appeared to be perfectly healthy, with a hearty appetite, who had never lost any time from his work in over three years; nor had he complained of any illness. Nor had he ever consulted a doctor for any cause. He suffered a fall and from that time on is incapacitated; grows progressively worse, and dies. The lay mind under such circumstances, in view of the medical testimony, can reasonably arrive at no other conclusion than that reached by the Commission and the circuit court— that the Bright's Disease was aggravated and accelerated by the accidental injury.

By the testimony of Dr. Hendricks above referred to, the cause and effect relation was taken out of the doubtful field

of "could," "might", "possibly," and placed upon a more positive foundation from which the reasonable inference can be drawn that the fall was a contributory factor in accelerating and aggravating the pre-existing disease.

Where a previously diseased condition is aggravated ■ by injury or accident arising out of or in the course of employment, and this results in death or disability, there is a compensable injury. *Cole v. State Highway Department,* 190 S. C. 142, 2 S. E. (2d) 490; *Cromer v. Newberry Cotton Mills,* 201 S. C. 349, 23 S. E. (2d) 19; *Green v. City of Bennettsville,* 197 S. C. 313, 15 S. E. (2d) 334; *Ferguson v. State Highway Department,* 197 S. C. 520, 15 S. E. (2d) 775; *Sweatt v. Marlboro Cotton Mills,* 206 S. C. 476, 34 S. E. (2d) 762.

When the deceased was being taken from the mill to the office of Dr. Senn he is quoted by his co-laborer who accompanied him, as saying that "he was sick." This was construed by the circuit court to mean, "I am sick." The appellant argues that the past tense "was" and the present tense "am" make a vital difference in the logical sequence or theory of appellant's case. It is contended that when the deceased stated that he *was* sick, he referred to his physical condition prior to the accident and not to a condition which arose in consequence of his accidental fall. It seems to us clear that when he made the quoted statement he was referring to the present time—that is, the condition he was in at the time he was being taken to the doctor's office.

Some of the medical evidence was to the effect that one afflicted with Bright's Disease may have symptoms or spells of dizziness or even have convulsions. In view of this testimony, it is suggested by appellant that it is reasonable to infer that the fall suffered by the deceased was occasioned by a dizzy spell, attributable to his disease. But we think that the weight of the evidence negatives this conclusion. When he reported for work on the morning of the accident no one noticed any such condition. On the contrary he re-

plied to a greeting from a fellow workman immediately before going to work that he was all right. And Dr. Senn expressed the opinion that dizziness does not come on suddenly, it is a gradual process when one is affected by uremic poisoning.

Appellants rely strongly upon the case of *Mack v. Branch No. 12, Post Exchange, Fort Jackson*, 207 S. C. 258, 35 S. E. (2d) 838, which has many similar features. But the medical evidence in that case did not support a finding of causal connection between the accidental injury and the subsequent death. It was based upon possibilities. In the *Mack case* the following was quoted with approval from *Fink v. Sheldon Axle and Spring Co.*, 270 Pa. 476, 113 A. 666:

"They (the doctors) must go further and testify at least that, taking into consideration all the attending data, it is their professional opinion (that) the result in question most probably came from the cause alleged."

In the case at bar, we have quoted the testimony of Dr. Hendricks to the effect that the fall "would tend to shorten whatever life he might have, if it was severe enough; * * * and would tend, to aggravate any malady he had." In our opinion, these expressions come within the rule stated in the case of *Fink v. Sheldon Axle and Spring Co., supra,* and are more positive than the phrase "most probably" found in the statement of the rule.

Our discussion has covered both of the stated grounds of appeal: (a) Did the accidental injury arise out of the employment, and (b) Was there any causal relation between the injury and the death of Roscoe Holly? We are satisfied that the evidence justifies an affirmative answer to both of these questions.

Proof that the deceased sustained an injury and that it arose out of and in the course of his employment may be established by circumstantial as well as by direct evidence, where the circumstances surrounding the occurrence of the injury are such as to lead an unprejudiced

mind reasonably to infer that it was caused by accident; evidence need not negative all other causes of resultant injury in compensation proceedings. *Ferguson v. State Highway Department,* 197 S. C. 520, 15 S. E. (2d) 775.

There is one other question: The claimant, Roland ■ Holly, was awarded the maximum allowance of $6,000.00 under the Act. At the time of the hearing he was thirty-two years of age and was not dependent upon his father, the deceased. It is contended under a construction of Section 7035-43, 1942 Code, that in the event of liability on the part of appellants, he should have been awarded only one-half of the commuted amount of future installments of compensation as determined by the Commission. Section 7035-43 reads:

"If a deceased employee leaves no dependents, the employer shall pay to the next of kin as herein defined the commuted amounts provided for in Section 7035-41 for whole dependents, less burial expenses * * *"

The Section further provides (as amended Acts, 1944, Page 1299):

"For the purpose of this Section the term 'next of kin' shall include only the father, mother, widow, child, brother or sister of the deceased, irrespective of age or dependency * * *"

By referring to Section 7035-41, it will be noted that the reference there made to one-half of the commuted amount relates solely to aliens. We agree with the circuit court that under Section 7035-43, as amended, the award should be for the full commuted amount for "whole dependents," less burial expenses.

Judgment affirmed.

BAKER, CJ., and STUKES, TAYLOR and OXNER, JJ., concur.

ON PETITION FOR REHEARING

PER CURIAM.

In the opinion filed in this case, reference is made to the fact that it possesses many points similar to *Mack v. Branch No. 12, Post Exchange, Fort Jackson,* 207 S. C. 258, 35 S. E. (2d) 838. These comparable features are strongly emphasized in the petition for rehearing, with the suggestion that this case should be controlled by the *Mack case*. In the *Mack case* it was held that the medical evidence did not support a finding of causal connection between the accidental injury and the subsequent death.

There is marked distinction between the case at bar and the *Mack case,* which we think appellants overlook. The decision in the latter case turned almost entirely upon the medical evidence. The facts testified to, aside from the medical testimony, were weak and inconclusive. The evidence bearing upon the relation between the burn sustained and the development of the pre-existing disease was tenuous and problematical, and the final phase of the disease and consequent death was long delayed. In the case at bar it is conceded that the deceased, Roscoe Holly, was afflicted by a pre-existing disease and sustained a severe injury when he fell at least eight feet and landed on his hip. His disease immediately became virulent, activated and accelerated, and he died within two weeks.

We reaffirm the statement made in the opinion that under such circumstances the lay mind could reasonably arrive at no other conclusion than that the disease was aggravated by the injury.

As generally applicable, see *Moyle v. Mutual Life Ins. Co.,* 201 S. C. 146, 21 S. E. (2d) 561, 564, where it is said:

"* * * a medical opinion which conflicts with the physical facts will not be permitted to control the determination of a factual controversy."

Also see *Poston v. Southeastern Const. Co.,* 208 S. C. 35, 36 S. E. (2d) 858.

The petition for rehearing is hereby denied.