HAROLD HENDERSON, PETITIONER-APPELLANT, v. CELA-
NESE CORPORATION, RESPONDENT-RESPONDENT

Argued September 20, 1954—Decided October 11, 1954.

*Mr. Mortimer Wald* argued the cause for appellant (*Messrs. Kapelsohn, Lerner, Leuchter & Reitman,* attorneys).

*Mr. Isidor Kalisch* argued the cause for respondent (*Mr. Stanley U. Phares,* attorney).

The opinion of the court was delivered by

WACHENFELD, J. The authorities are divided upon the problem submitted, and the reasoning employed in the different schools of thought is as conflicting as the divergent results.

The inquiry is whether compensation is due an employee who suffered an injury as a result of striking his head against the concrete floor of his employer's premises during the course of his employment, when the cause of the fall was an epileptic seizure unrelated to his employment. The facts are not complicated or in dispute.

The petitioner had been an epileptic for a period of years. He suffered a seizure at the plant of the employer, causing him to fall to a concrete floor, striking his head, resulting in a cerebral concussion.

It is not contended nor suggested that the employment brought on the seizure in any way or was in anywise connected with it. The crux of the appellant's argument is that the concrete floor of the plant constituted a hazard of the

employment which contributed to the accident, thus supplying the necessary basis for compensation under the statute.

The Workmen's Compensation Division allowed compensation, but the County Court reversed because "the seizure or fall in the instant case was not contributed to by the employment. The accident did not arise out of the employment and is therefore not compensable."

The Appellate Division likewise concluded no compensation should be allowed, holding:

"To constitute a risk incidental to employment the instrumentality alleged to have produced or contributed to the injuries complained of would have to be connected in some manner with what the workman had to do in fulfilling his contract of service." 30 *N. J. Super.* 353 (*App. Div.* 1954.)

There was a dissent in the Appellate Division, and the appeal is here as a matter of right. *R. R.* 1:2–1(*b*). *N. J. Constitution*, 1947, *Art.* VI, *Sec.* V, *par.* 1(*b*).

There is no novelty in the query as to the compensability of an injury resulting from an ideopathic fall. In the majority of jurisdictions it is settled that compensation is awarded where the fall is accompanied by some additional or contributing hazard, as where a painter falls from a scaffold or a truck driver topples to the street from his truck or a librarian faints while on a ladder and falls to the floor. *Schneider, Workmen's Compensation Text*, § 1376; 58 *Am. Jur., Workmen's Compensation*, § 271.

In *Reynolds v. Passaic Valley Sewerage Com'rs*, 130 *N. J. L.* 437 (*Sup. Ct.* 1943), affirmed 131 *N. J. L.* 327 (*E. & A.* 1944), the employee, as a result solely of an epileptic seizure, fell against a hot stove and was injured. The employer had placed the stove in a little shanty where the employee sought relief from the inclement weather. Compensation was allowed, and speaking of the precise issue presently confronting us, the court said:

"The sound rule is that whenever conditions attached to the place of employment or otherwise incident to the employment are factors in the catastrophic combination, the consequent injury arises out of the employment."

Was the concrete floor, one of the "conditions attached to the place of employment," a factor in the "catastrophic combination?" We think not, principally for the reasons expressed by the majority in the Appellate Division.

█ Conflicting results have been reached in other jurisdictions, and ample authority can be found on either side. Ohio, Massachusetts, New York, Indiana and Rhode Island support the conclusion of the majority below denying recovery, while many other states and England support the contrary view. We are inclined to the reasoning and results of those cases denying compensation. The English rule allows compensation in a like situation, and the appellant suggests that if we were to give greater consideration to the dispositions there made, an opposite conclusion in the case before us would be required. We look for light wherever we may find it, but if a decision of our own is applicable and dispositive, we are prone to follow it unless some meritorious reason is apparent why we should do otherwise.

Although the identical case has not been encountered in our jurisdiction, we have announced principles in comparable causes that seem to control the issues here presented.

██ Our approach to the problem at hand is necessarily conditioned by two oft-repeated fundamental propositions: an injury suffered during the course of work does not *per se* entitle one to the benefits of the Workmen's Compensation Act, for it must also appear that the injury arose out of the employment, *Seiken v. Todd Dry Dock, Inc.*, 2 *N. J.* 469 (1949); *Gargiulo v. Gargiulo*, 13 *N. J.* 8 (1953); and a risk is "incidental to the employment" when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. *Bryant v. Fissell*, 84 *N. J. L.* 72 (*Sup. Ct.* 1913); *Beh v. Breeze Corp.*, 2 *N. J.* 279 (1949); *Robertson v. Express Container Corp.*, 13 *N. J.* 342 (1953).

█ Without repeating at length the various and numerous phrases employed in discussing whether or not a given accident "arises out of" the employment, the core of the principle involved, as it relates to the present problem, is stated with

some preciseness in *Spindler v. Universal Chain Corp.*, 11 *N. J.* 34 (1952). Speaking of falls generally, we said:

"If it was occasioned by or was the result of a disease or physical seizure and was not contributed to by 'what the workman had to do' it is not compensable. On the other hand, if the fall 'would not have occurred but for the services rendered' in the employment, it is covered by the statute."

We elaborated further on the controlling distinctions, pointing out that the record there contained nothing to indicate the fall was occasioned by disease or infirmity but "was brought about by the employee's turning to replace the instrument she was using to the shelf located behind her in furtherance of the purpose of her employment. If the turn had not been endeavored, the loss of balance preceding it and the fall would not have occurred."

The fall in the case *sub judice* was not caused by anything "in furtherance of the purpose of * * * employment," but admittedly was due entirely to a physical seizure caused by a disease unconnected with the employment.

 Equally appropriate and applicable is the following from *Connelly v. Samaritan Hospital*, 259 *N. Y.* 137, 181 *N. E.* 76 (*Ct. App.* 1932), embraced with approval in *Reynolds v. Passaic Valley Sewerage Com'rs., supra*:

"A physical seizure unrelated to the employment is not such an accident as is compensable. * * * It is the fall and the injury resulting from it that constitutes an accident within the purview of the statute. The cause may be disregarded and the inquiry limited to an investigation to disclose whether the fall, having occurred, bore with it such consequence as would not have occurred except for the employment. * * * Thus where the primary cause of the accident must be eliminated because it has no relation to the employment, the inquiry proceeds to the possible co-operating causes which produced the injury. The test is the same. If, except for the employment the fall, though due to a cause not related to the employment, would not have carried the consequences it did, then such causal connection is established between the injury and employment and the accidental injury arose out of the employment. The employment has subjected the workman to a special danger which in fact resulted in injury."

Cases from other jurisdictions buttressing this determination are cited and quoted from at length in the majority

opinion below. The different avenues of approach all lead to a denial of compensation on the ground of remoteness of the asserted connection between the employment and the injury. See *Stanfield v. Industrial Comm.*, 146 *Ohio St.* 583, 67 *N. E. 2d* 446 (*Ohio Sup. Ct.* 1946); *In re Madden*, 222 *Mass.* 487, 111 *N. E.* 379, *L. R. A.* 1916*D*, 1000 (*Mass. Sup. Jud. Ct.* 1916); *Cinmino's Case*, 251 *Mass.* 158, 146 *N. E.* 245, 37 *A. L. R.* 769 (*Sup. Jud. Ct.* 1925); *Rozek's Case*, 294 *Mass.* 205, 200 *N. E.* 903 (*Mass. Sup. Jud. Ct.* 1936); *Andrews v. L. & S. Amusement Corp.*, 253 *N. Y.* 97, 170 *N. E.* 506 (*Ct. App.* 1930); *Pollock v. Studebaker Corp.*, 230 *Ind.* 622, 105 *N. E. 2d* 513 (*Ind. Sup. Ct.* 1952); and *Remington v. Louttit Laundry Co.*, 74 *A. 2d* 442 (*R. I. Sup. Ct.* 1950).

Schneider, *op. cit. supra*, vol. 5, § 1376, disposes of the matter thusly:

> "Where an employee is seized with an epileptic fit, dizziness or vertigo and falls due to such or other like causes and is injured the question that usually determines whether the injury is compensable is: did the employee's working conditions contribute to the fall and consequent injury or was the accident solely due to the employee's ideopathic condition which might have caused him to fall in his home with the same injurious results? If it is the latter, the employer is not liable; if the former, he is liable."

Concrete floors admittedly are not incidents of home life. They are, however, usual and common in industrial plants. The Compensation Act has not contravened the law of gravity, and discomfort in a greater or less degree is inevitably the companion of a fall. The same consequences would probably have been forthcoming had the appellant suffered his seizure in the street or in his home.

We see no justification for classifying a level, customary concrete floor as a hazard or special condition of employment. Rigidity and firmness are adjuncts of the average floor despite its particular composition.

Even assuming a concrete floor carried with it a potentiality for doing harm, the risk to which the employee here was subjected did not arise from the nature of the floor

or its quality of "hardness" but was, rather, created solely by his peculiar affliction. It was thus distinctly personal to the claimant and was not the creature of the employment or any condition thereof. See Larsen, Legal Aspects of Causation in Workmen's Compensation, 8 *Rutgers Law Review, No. 3,* Summer 1954.

There was no evidence that the appellant was doing anything for his employer when the accident occurred. His injury was not caused by any appliance or instrument put upon the premises by the employer constituting an added hazard which would create liability under our cases.

The Legislature may in its wisdom some day in the future direct that every workman injured in employment shall be compensated for his injury. Until such time, even though the Compensation Act be remedial in its nature, we should not usurp and trespass upon the legislative province and attempt to reach by judicial decree a result which they have not provided for by legislative enactment. *Robertson v. Express Container Corp., supra.*

The judgment below is affirmed.

WILLIAM J. BRENNAN, JR., J. (dissenting). I agree with Judge CLAPP that the accidental injury here was attributable in a substantial part to one of the conditions of employment, the concrete floor, and for the reasons expressed in his dissenting opinion in the Appellate Division would reverse and direct reinstatement of the award allowed in the Workmen's Compensation Division.

HEHER and JACOBS, JJ., join in this dissent.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD and BURLING—4.

*For reversal*—Justices HEHER, JACOBS and BRENNAN—3.