17026

MRS. BLANCHE W. BAGWELL, Appellant, v. ERNEST BUR-
WELL, INC., Employer, and LIBERTY MUTUAL IN-
SURANCE COMPANY, Insurance Carrier, Respondents

(88 S. E. (2d) 611)

*Messrs. Whiteside & Smith,* of Spartanburg, and *Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,*

446

*Messrs. Butler & Chapman,* of Spartanburg, *for Respondents,*

July 7, 1955.

Oxner, Justice.

This is a proceeding under the Workmen's Compensation Act, Code 1952, § 72-1 *et seq.*, to recover compensation for the death of Howard Alton Bagwell who was employed by Ernest Burwell, Inc., a corporation engaged in selling and servicing automobiles in the City of Spartanburg. It has been recently before this Court but not on the merits. *Bagwell v. Ernest Burwell, Inc.*, S. C., 87 S. E. (2d) 583, filed May 9, 1955.

On October 10, 1952, while in the performance of his duties on the premises of his employer, Bagwell suddenly fell backward on a concrete floor and two days later died without ever having regained consciousness. According to the physicians, death resulted from a subdural hemorrhage. A claim for compensation was filed by the mother who was his sole dependent. It was denied by the hearing Commissioner. A majority of the full Commission reached a different conclusion and awarded compensation. On appeal to the Circuit Court by the employer and carrier, the award of the full Commission was reversed and the opinion of the hearing Commissioner reinstated. From this order, the claimant has appealed. The questions for determination are (1) whether there was an injury by accident, and (2) if so, whether it arose out of the employment.

Deceased was forty years old, about six feet tall, weighed around 175 lbs., and was apparently in good physical condition. His fall occurred at approximately 11:00 o'clock on the morning of October 10th while standing at a service desk in his employer's place of business, with one elbow on the desk. A fellow employee who had talked to him about half a minute before his fall, testified that he noticed nothing unusual and heard no complaints. This witness, who did not see the fall until deceased was about eighteen inches

from the floor, said he "was falling backwards and after he hit the floor it looked to me like his head was back and hit the floor first—that is the way it looked to me, and it hit with force enough until his head bounced possibly three inches, in my estimation." He further testified on cross examination:

"Q. And as you were turning to leave the desk, that is when, out of the corner of your eye, you saw Mr. Bagwell falling? A. That is correct.

Q. When you talk about him having his elbow on the desk, it is high enough for a person just naturally to lean on it? A. That is correct.

Q. And it was just a natural thing to do? A. That's right. We all do it.

Q. And it was not connected with anything that you observed about his condition? A. No, sir, that is correct.

Q. Before he fell, he made no outcry or noise of any kind? A. Not to my knowing. I didn't hear it.

Q. How far were you from him? A. I was within four feet of him, I guess, something between three and four feet.

Q. And the first noise you heard was when his head struck the floor? A. That is correct.

Q. And looking at him, it was his head that hit the floor first? A. That is the way I saw it.

Q. And his body seemed to you to be rigid as he fell, did it? A. Yes, sir, it did."

Another employee, who was a witness for respondents, testified:

"Q. Did you see Mr. Bagwell when he fell around there on the morning of October 10th? A. Yes, sir.

Q. Had you spoken to him shortly before that? A. Yes, it had not been more than half a minute or a little more.

Q. Where was he when he fell—in what place in the building? A. He was in the front, standing at the service desk.

Q. Can you look at this picture and—

Mr. Whiteside: Is that based on his knowledge—A. He was standing at the desk on the right in that picture.

Q. Will you look at this picture and tell me where you were? A. This is my place right here (indicating). I work out on the floor and he was standing right here at the desk.

Q. Was he in your view? Could you see him? A. Yes, sir.

Q. Could you see his entire body? A. Yes, sir.

Q. What was he doing, as you looked at him there? A. Well, as well as I remember, he had just walked over and was standing there.

Q. What, if anything, happened with reference to his falling? A. Well, all I know is, he was standing there and all at once he went back like you would hold up a stick or broom and let it fall.

Q. Did he make a step before he started to fall? A. No, sir.

Q. Was his body limber or stiff? A. It seemed to be stiff.

Q. What part of him struck the floor first? A. The way it looked and sounded, his head hit the floor first.

Q. Did you see whether or not he slipped in any way or hit anything? A. He did not slip—

Q. Did he hit anything on the way down? A. No, sir, there was nothing for him to hit.

Q. Did you hear him say anything or make any outcry? A. No, sir.

Q. Was he falling on his side or back? A. He fell straight back."

Deceased was attended by his family physician immediately after the fall. A surgeon was later called in and operated. On the day following his death, an autopsy was performed. All of these physicians agreed that the cause of death was a right subdural hemorrhage, which is ordinarily brought about by trauma, but none was able to give any reason for the fall. One suggested the possibility that he may have fainted or suffered a subarachnoid hemorrhage

but declined to give a definite opinion to that effect. The family physician stated that he had been called to see deceased on several occasions during the year prior to his death but never observed any organic disease. There is no evidence that deceased while standing at the desk slipped or lost his balance, nor is there any showing that his fall was caused by any hazards of his emploment. An examination of the floor shortly after the occurrence disclosed no evidence of grease or other foreign substance. The floor was dry. The body of the deceased was rigid as he fell and the testimony indicates that he made no effort to catch himself or otherwise break the fall.

It must be conceded that the deceased's fall occurred in the course of his employment but this alone furnishes no basis for an award. It must be further shown either that the cause of the fall or of the resulting injury bore some special relation to his work or to the conditions under which it was performed. *Rozek's Case,* 294 Mass. 205, 200 N. E. 903. The claimant had the burden of showing that her son's death was caused by an accident that arose out of his employment. *Cagle v. Judson Mills,* 195 S. C. 346, 11 S. E. (2d) 376; *Fleming v. Appleton Co.,* 214 S. C. 81, 51 S. E. (2d) 363; *Rivers v. V. P. Loftis Co.,* 214 S. C. 162, 51 S. E. (2d) 510. As pointed out in the last-mentioned case and numerous others, an award must be founded on evidence and cannot rest on surmise, conjecture or speculation. Of course, the necessary requirements for compensation may be established by circumstantial evidence. *Buff v. Columbia Baking Co.,* 215 S. C. 41, 53 S. E. (2d) 879.

Has the claimant shown that the fall of deceased was caused by an accident within the contemplation of the Workmen's Compensation Act? There is certainly no evidence, either direct or circumstantial, showing such fact. On the contrary, the manner in which he fell and all the surrounding circumstances rather indicate that his fall was due to some internal failure or weakness. A physi-

cal seizure unrelated to the employment is not such an acci-- dent as is compensable. *Cagle v. Judson Mills, supra,* 195 S. C. 346, 11 S. E. (2d) 376. Considering the evidence most favorably from the claimant's standpoint, we are presented with a situation where an employee, while standing at a desk in his employer's place of business, with one elbow on the desk, suddenly falls rigidly backward for no discoverable reason. It would be wholly conjectural under these circumstances to say that the cause of the fall had any relation to his work or the conditions under which it was performed. *Miller v. Springs Cotton Mills,* 225 S. C. 326, 82 S. E. (2d) 458. In the latter case claimant's knee failed to function normally for some unknown reason. Compensation was denied.

It is argued, however, that when an employee is found injured or dead under circumstances indicating that his injury or death took place within the time and space limits of the employment, in the absence of any evidence as to what caused his condition, there is a presumption or inference that it arose out of the employment. There are decisions indulging such a presumption. In Larson on Workmen's Compensation, Volume 1, Section 10.32, Page 103, it is stated: "The practical justification lies in the realization that, when the death itself has removed the only possible witness who could prove causal connection, fairness to the dependents suggest some softening of the rule requiring claimant to provide affirmative proof of each requisite element of compensability." It is interesting to note, however, that in almost every decision invoking such a presumption, the death of the employee had obviously been violent and accidental. Illustrative of these cases are those unwitnessed accidents in which employees have been found run over by trains or trucks, burned by gasoline, blown up by dynamite, asphyxiated by gas, or killed by falls from buildings, from boats, or from trains. In almost every case there was persuasive circumstantial evidence that death resulted from accidental means, and the courts invoked the universally ac-

cepted presumption against suicide. Of this character, is our own case of *Owens v. Ocean Forest Club, Inc.,* 196 S. C. 97, 12 S. E. (2d) 839, 841. There a game warden was found, during his hours of employment, on his employer's premises, dead from a bullet wound through the head. The Court concluded that the circumstances were sufficient to warrant an inference of an accidental death arising out of the deceased's employment, and stated that there is a presumption "that one charged with the performance of a duty and injured while performing such duty, or found injured at a place where his duty may have required him to be, is injured in the course of, and as a consequence of, the employment." In the case of *Buff v. Columbia Baking Co., supra,* 215 S. C. 41, 53 S. E. (2d) 879, strongly relied on by claimant, the employee was found lying in an unconscious condition in front of a machine where he was working. It appeared that the machine was charged with electricity. The medical experts were unable to explain the cause of his death but there was strong circumstantial evidence tending to show that it was due to an electric shock.

We need not decide in the instant case whether there would be a presumption that the death of Bagwell arose out of his employment if no one had witnessed his fall and there was before us only the circumstance that he was found lying unconscious on the floor in his employer's place of business. While the cause of his fall may be unexplained, the circumstances of his fall are fully covered by the testimony of eyewitnesses, which clearly shows that his employment was not a contributing cause. See *Eggers v. Industrial Commission,* 157 Ohio St. 70, 104 N. E. (2d) 681.

Our conclusion that claimant has failed to show any causal connection between the fall of deceased and his employment does not, as respondents' counsel seem to think, end our inquiry. There remains for determination whether the fall bore with it such consequence as would not have occurred except for the employment. In other words, we must inquire whether the employment contributed to the effect

of the fall. "If, except for the employment, the fall, though due to a cause not related to the employment, would not have carried the consequences it did, then causal connection is established between injury and employment and the incidental injury arose out of the employment. The employment has subjected the workman to a special danger which in fact resulted in injury." *Connelly v. Samaritan Hospital,* 259 N. Y. 137, 181 N. E. 76, 78.

There is abundant evidence warranting the conclusion that the subdural hemorrhage causing death was brought about by the blow to the head when Bagwell fell backward on the concrete floor. We have, therefore, before us the difficult question of whether compensation should be awarded where an employee suffers an injury or dies as a result of striking his head against the concrete floor of his employer's premises during the course of his employment, when the cause of the fall is wholly unrelated to his employment. Upon this question there is a sharp division of authority. Numerous cases can be found sustaining either view. Among those denying compensation under the circumstances mentioned are: *Andrews v. L. & S. Amusement Corporation,* 253 N. Y. 97, 170 N. E. 506; *Rozek's case, supra,* 294 Mass. 205, 200 N. E. 903; *Eggers v. Industrial Commission, supra,* 157 Ohio St. 70, 104 N. E. (2d) 681; *Henderson v. Celanese Corporation,* 16 N. J. 208, 108 A. (2d) 267; *Remington v. Louttit Laundry Co.,* 77 R. I. 185, 74 A. (2d) 442. Among those sustaining compensation are: *Pollock v. Studebaker Corporation,* Ind. App., 97 N. E. (2d) 631; *Employers Mutual Liability Insurance Co. of Wisconsin v. Industrial Accident Commission,* 41 Cal. (2d) 676, 263 P. (2d) 4; *General Insurance Corporation v. Wickersham,* Tex. Civ. App., 235 S. W. (2d) 215; *Savage v. St. Aeden's Church,* 122 Conn. 343, 189 A. 599. It is interesting to note that in almost every one of the cases involving the question under discussion there was a strong dissenting opinion.

Dean Larson apparently thinks the line of cases denying compensation represents the better view. In Volume 1, Section 12.14, after quoting from the Texas case above mentioned, he inquires (page 163) : "Once you have decided to compensate idiopathic level-floor falls, how will you phrase the basic principle which connects such an injury with the employment?" He then points out the fallacy of the reasoning found in the cases upholding compensation and remarks (Page 165) : "What then is to be done about this class of cases? One thing is certain: the statute will not permit the scrapping of the principle that the employment must contribute something to the hazard of the fall, especially since the injury stems originally from such an overwhelmingly personal source as internal weakness or disease."

We think the more logical view is that represented by the cases denying compensation and, too, this conclusion is more in harmony with the definition which this Court has consistently given the phrase "arising out" of the employment. In the *Cagle case, supra,* 195 S. C. 346, 11 S. E. (2d) 376, compensation was denied where an employee fainted and fell on a wooden floor, resulting in a cerebral edema from which he died. To say that an injury arises out of the employment in every case where an employee was required to be at the place where the injury occurred would effectively eliminate an essential requirement of the statute. We are not prepared to accept the contention that, in the absence of special condition or circumstance, a level floor in a place of employment is a hazard. Cement floors or other hard floors are as common outside industry as within it. The floor in the instant case did not create a hazard which would not be encountered on a sidewalk or street or in a home where a hard surface of the ground or a hard floor existed. As stated in *Henderson v. Celanese Corporation, supra,* 16 N. J. 208, 108 A. (2d) 267, 270: "The Compensation Act has not contravened the law of gravity, and discomfort in a greater or less degree is inevitably· the companion of a fall." The Court there further said: "We see no justification

for classifying a level, customary concrete floor as a hazard or special condition of employment. Rigidity and firmness are adjuncts of the average floor despite its particular composition." In *Cinmino's case,* 251 Mass. 158, 146 N. E. 245, 246, 37 A. L. R. 769, the Court said:

"* * * The only question is whether the injury which resulted from the described impact of the head with the concrete floor was a risk and hazard of the employment; or, otherwise expressed, was there a causal connection between the conditions under which the work was to be performed and the injury which resulted. * * *

"We think there is no measurable distinction between the hazard of an employment where the floors are made of concrete and an employment where the floors are of hard wood, of soft wood, or of dirt, because of the fact that one material is of greater or less resiliency than another. To hold that a concrete floor in a place of employment is a danger which effects the risks which an employee encounters and is a hazard which arises out of an employment, would require a further holding, when the occasion arose, that any flooring of any material is a hazard of employment against which the statute gives compensation whenever there is a causal relation between the hazard and the injury. The causal relation in such a case is too remote and speculative for practical application. * * *"

We do not think the case of *Holly v. Spartan Grain & Mill Co.,* 210 S. C. 183, 42 S. E. (2d) 59, requires, as counsel for claimants seem to think, a conclusion different from that which we have reached. There the employee died of Bright's Disease which was aggravated and accelerated by an accidental fall arising out of and in the course of his employment. While walking on a "catwalk" the deceased fell into an open bin beneath him. There were no eyewitnesses but the evidence warranted an inference that the employment conditions contributed to the effect of the fall.

Counsel for claimant state that the Supreme Court of North Carolina has upheld compensation under facts simi-

lar to those in the instant case, citing *Robbins v. Bossong Hosiery Mills,* 220 N. C. 246, 17 S. E. (2d) 20, and *De Vine v. Dave Steel Co.,* 227 N. C. 684, 44 S. E. (2d) 77, and argue that these decisions should be followed because our Act was taken from the North Carolina Act. The decisions of that Court construing the North Carolina statute are always helpful and persuasive, although we have in a few instances declined to follow them when contrary to our own view as to the proper interpretation of the Act. We are not prepared to concede, however, that the decisions mentioned control the question before us. The distinguishing features are pointed out in the later case of *Vause v. Vause Farm Equipment Co.,* 233 N. C. 88, 63 S. E. (2d) 173, 180. There the claimant was driving a truck when he felt an epileptic attack coming on. He pulled the truck to the side of the road and parked, then opened the door and lay down on the seat cusion. In the course of the attack, he suffered a pelvic fracture and dislocation of the hip, and was found hanging on to the steering wheel with his legs out the door. In denying compensation, the Court said:

"He pulled the truck off the road, parked it, and lay down on the seat in a place of apparent safety, with all of the ordinary dangers of his employment suspended and in repose. We perceive in this evidence no showing that any hazard of the employment contributed in any degree to the unfortunate occurrence. The evidence affirmatively shows that it was solely the force of his unfortunate seizure that moved him from his position of safety to his injury."

That this opinion may not be misunderstood, we desire to say that we do not agree with respondents' counsel in the statement that under our decisions if the fall originates in a cause unrelated to the employment, compensation must be denied even though a particular hazard inherent in the working conditions contributes to the fall and consequent injury. We do not construe *Cagle v. Judson Mills, supra,* 195 S. C. 346, 11 S. E. (2d) 376, and *Edge v. Dunean Mills,* 202 S. C. 189, 24 S. E. (2d) 268, cited by respond-

ents' counsel, as so holding. In the *Cagle case, supra,* the employee fell on a wooden floor and, as here, the hard floor was not an employment hazard. In the *Edge case,* the employee suffered an injury as a result of falling down a flight of stairs during an epileptic seizure. It was held that the claim was barred because not filed within the statutory period. Although it was unnecessary to pass upon any further question, the Court stated that the employee did not suffer an injury by accident arising out of his employment. What was said with reference to the last question must necessarily be regarded as *dicta.* Apart from this, the claimant there did not seek to establish liability on the theory that even though the origin of the fall was not related to the employment, the employment conditions contributed to the effect of the fall, and this theory of liability was not discussed by the Court.

Affirmed.

STUKES, TAYLOR and LEGGE, JJ., concur.

J. WOODROW LEWIS, Acting Associate Justice (dissenting).

I think that under the testimony in this case and the permitted inferences to be drawn therefrom the question of whether the fall of the deceased arose out of and in the course of his employment were issues to be determined by the commission. There can be no doubt that from the record the inference that the fall of the deceased was caused by a physical seizure is a plausible one. Indulging the presumption of fact from the unexplained fall *Owens v. Ocean Forest Club,* 196 S. C. 97, 12 S. E. (2d) 839; *Buff v. Columbia Baking Co.,* 215 S. C. 41, 53 S. E. (2d) 879; *Holly v. Spartan Grain & Mill Co.,* 210 S. C. 183, 42 S. E. (2d) 59, that the employee's death arose out of and in the course of his employment, it cannot be said that the inference drawn by the majority opinion is the only reasonable inference to be drawn from the testimony. The weight to be given the testimony of the witnesses is a matter for the

commission to determine and not this court. The commission has weighed the testimony in the light of the permitted inference and has concluded that the deceased suffered a compensable injury.

I would reverse the order of the circuit court and reinstate the award of the Full Commission.