Jo Ann HOWARD, Individually and as Natural Guardian and Next Friend of Stephen Lee Howard, Carl Edward Howard, William Lester Howard and Emmett M. Howard, Jr., Appellant,

v.

FORD MOTOR COMPANY, Respondent.

No. 23536.

Kansas City Court of Appeals.

Missouri.

Oct. 1, 1962.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 3, 1962.

John C. Thurlo, Henry G. Eager, Winston V. Buford, Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, of counsel, for appellant.

Jack W. R. Headley, Irvine O. Hockaday, Jr., Kansas City, Lathrop, Righter, Gordon & Parker, Kansas City, of counsel, for respondent.

MAUGHMER, Commissioner.

We have here a claim and suit for workmen's compensation benefits. After an extended hearing the referee denied the claim. The Industrial Commission affirmed as did the circuit court and claimant has appealed. The referee found:

(1) The employee, Emmett Howard, sustained an accident on June 18, 1959, "arising in the course of his employment with Ford Motor Company", but "said accident did not arise out of said employment".

(2) "That the accident occurred when Emmett Howard suffered an insulin reaction which caused him to fall and thus his fall was the result of his own diseased condition and was not in any way a consequence of or caused by his employment".

(3) "There being no causal connection between his employment and his accident, compensation must be and the same is hereby denied".

Upon appeal the commission unanimously affirmed the award and findings of the referee.

■ The employee, Emmett Howard, died on January 24, 1962, admittedly from causes not resulting from injuries sustained in the accident in question. His widow individually and as next friend for the dependent children was duly substituted as claimant. Since the referee and commission found that the accident was not compensable, no determination was made as to the extent of disability, the medical estimates as to which varied considerably. However, it does not affirmatively appear that an amount in excess of $15,000 is involved, hence jurisdiction rests with this court.

On June 18, 1959, the employee, Emmett Howard, was thirty-two years of age, stood five feet and four inches in height, and had been employed by respondent Ford Motor Company for about seven years. On this particular day he was working as a repairman. He had been a recognized diabetic for five years. In an effort to control the diabetes he regularly took insulin —self-administered protamine zinc insulin. His daily dosage was 25 units. Prior to the June 18th incident he had suffered four separate and severe fainting attacks. The first occurred at his home early one morning and before he had eaten breakfast. The other three came on late in the afternoon while he was working around his home on the outside and when he had neglected to have lunch. On each of these occasions orange juice revived him. The evidence shows that Mr. Howard was of normal intelligence. He had served 16 months in the navy, had been mayor of Camden, Missouri, and was generally regarded as a good workman.

Immediately prior to the accident in question, he appeared normal to fellow employees. He was working on Assembly Line No. 3 at respondent's Claycomo plant. He had made an adjustment on another line and returned to No. 3. This assembly line

platform was 4 feet, 7 inches in width and 12½ inches in height from the surrounding concrete floor. The accident occurred about 4:00 or 4:30 p. m. Mr. Howard testified: "I stepped up on the line and my old leg, it's bad now, slipped and I started to step with the other and that's when I fell, knocked the other one right out from under me, just like I didn't have no leg". He fell and his head apparently struck the concrete floor. Fellow workers found him comatose and bleeding from the nose, ears and mouth. Some of them observed spasmodic movements of the arms and legs and he then became motionless. The company nurse gave him orange juice, which he immediately vomited. There was involuntary urination.

The patient was transferred to the North Kansas City Memorial Hospital and admitted to the emergency room at 6:10 p. m. He remained there 23 days and until July 11th. For the first few days he remained practically comatose, unresponsive and drained blood and spinal fluid from his ears. X-rays revealed a temporal parietal noncompressed skull fracture. He had a right facial paralysis, loss of memory and diminished hearing. His diabetes became labile and difficult to control. He spent 7 days (July 20–27, 1959) in a Lexington, Missouri hospital, where he was treated for his diabetes. On August 21, 1959, he suffered an epileptic seizure and was hospitalized for 8 days. From September 6 to September 11, 1959, he was in the Ray County hospital for treatment of thrombophlebitis of the left leg, then transferred to the Veterans Hospital in Kansas City, where he remained until October 19, 1959. His over-all condition apparently deteriorated. There was loss of memory and mind destruction. Six doctors called by appellant declared him to be totally and permanently disabled.

Gary DeLouis, a fellow employee, was working on Assembly Line No. 3 and said he saw the employee fall. DeLouis stated he was 5 or 10 feet from Mr. Howard, that "he was looking straight at me and he had his hands up to his side, close to his body,

and his hands and whole arms were shaking nervously. I am demonstrating here how he appeared and I have my fists clinched and have them up together at my chest and I am moving them back and forth. I saw this man stand there shaking in this manner possibly four to six seconds. He appeared to be trying to talk to me but I couldn't hear a word from him. He just fell over backwards off the line. * * *. He made no effort to catch himself or to throw up his arms as he fell, and his arms were still shaking as he was falling. He did not yell out. I went over to him and both his feet were still up on the line and somebody pulled them down."

Drs. Edward C. Weiford, neurological surgeon, and Dr. Fred H. Lundgren, internal medicine, called by the employer, expressed the opinion that the fall was caused by an insulin reaction. These physicians described an insulin reaction as a situation where the blood sugar in an individual lowers to a point where it produces symptoms of weakness, trembling, difficulties in orientation, and convulsive seizures. Unconsciousness can come within seconds.

On appeal appellant, while not concurring in the correctness of the commission's finding that the employee's fall was caused by an insulin reaction, concedes there was sufficient probative evidence to support such a finding. She presents only one assignment of error, which we incorporate verbatim herein.

"Assuming that Mr. Howard's fall was due to a fainting spell induced by an insulin reaction, the commission and circuit court both erred in denying compensation because the uncontradicted evidence clearly establishes a causal connection in law between the conditions under which his work was required to be done and the resulting injuries and, thus, necessarily arose out of his employment within the meaning of the Compensation Act".

The testimony heard by the referee was voluminous. We deem it unnecessary to incorporate all of it in this opinion, witness by witness, exhibit by exhibt, for two reasons: First, our statement of the facts does, we think, constitute a fair, concise and sufficient statement of the essentials. Second, appellant concedes the conclusion that the fall was caused by an insulin reaction is justified by the evidence. Tersely stated, claimant's contention is that the employee's head injuries and resultant disability came about because he fell 12½ inches from the assembly line and struck his head on the concrete floor and that the raised platform and hard floor each constituted special and hazardous working conditions arising out of the employment, without which he would not have sustained the injuries, or at least some of them.

■ An appellate court must view the evidence upon which the commission made its award, in the light most favorable to the successful party below. Harper v. Home Imp. Co. et al., Mo., 235 S.W.2d 558. Neither the circuit court nor the appellate court may substitute its judgment on the evidence for that of the commission. Both courts are authorized to determine if the award of the commission is supported by competent and substantial evidence upon the whole record. Long v. Mississippi Line Co. of Mo. et al., Mo.App., 257 S.W.2d 167, 170, and cases cited. Kansas City v. Rooney, Mo. en Banc., 363 Mo. 902, 254 S.W.2d 626. The reviewing court may determine if the commission could have reasonably made its finding and reached its result. Seabaugh's Dependents v. Garver Lumber Mfg. Co., et al., Mo. en Banc., 355 Mo. 1153, 200 S.W.2d 55, 62. It is incumbent on claimant to establish that the accident arose out of the employment. Huskey v. Kane Chevrolet Co., Mo.App., 173 S.W.2d 637; Toole v. Bechtel Corporation et al., Mo., 291 S.W.2d 874.

■ Our Workmen's Compensation Law (Sec. 287.120, subd. 1, V.A.M.S.) requires the accident to be one "arising out of and in the course of" the employment in order to be compensable. As stated by this court

in Williams v. Great Atlantic & Pacific Tea Co., Mo.App., 332 S.W.2d 296, 298, "These are separate tests and each must be satisfied".

Appellant has cited 27 cases (five of which are from Missouri courts) in support of her position. Respondent has invited our attention to 21 cases which, it contends, uphold a contrary conclusion. We have examined these authorities, will refer to some of them particularly, and present our views as to the proper conclusions which should result from their application to our facts.

Larson's Workmen's Compensation Law, Vol. 1, pp. 158, 159, 160, gives us this general statement:

"When an employee, solely because of a non-occupational heart attack, epileptic fit or fainting spell, falls and sustains a skull fracture or other injury, the question arises whether the skull fracture (as distinguished from the internal effects of the heart attack or other disease, which of course are not compensable) is an injury arising out of the employment.

"The basic rule, on which there is now general agreement, is that the effects of such a fall are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle. The currently controversial question is whether the effects of an idiopathic fall to the level ground or bare floor should be deemed to arise out of the employment".

Larson continues his discussion and declares the simple rule, theory or requirement ought to be "that although the cause of the fall was originally a personal one, employment conditions contributed some hazard which led to the final injury" He expresses his opinion that this theory has been strained to the breaking point by the court

in General Ins. Corp. v. Wickersham, Texas Civ.App., 235 S.W.2d 215, which allowed recovery for an idiopathic fall to a level floor, and declared this no different from a fall from a dangerous height or into a hole or against some sharp object.

In Savage v. St. Aeden's Church et al., 122 Conn. 343, 189 A. 599 (1937) the Supreme Court of Errors of Connecticut in a 3–2 opinion allowed recovery where the employee, who was subject to heart attacks, fell on a level concrete floor. In Irby v. Republic Creosoting Co., 228 F.2d 195, the Fifth Circuit U. S. Court of Appeals allowed recovery under the Alabama law where an employee had an epileptic seizure and fell from a three foot platform and dislocated a vertebrae. The Kentucky Court of Appeals in Stasel v. American Radiator & Standard Sanitary Corp., 278 S.W.2d 721, affirmed an award where an employee, after an epileptic seizure, fell against a hot stove.

Unquestionably an idiopathic fall from an inherently dangerous height would meet the requirement of a hazard in the employment conditions. The least height on which a recovery was allowed under this theory (based upon the research of Larson and appellant) was perhaps 22 inches from the third or fourth step of a stairway. However, the opinion in Milwaukee Elec. Ry. & Light Co. v. Industrial Comm. of Wisconsin et al., 212 Wis. 227, 247 N.W. 841, is by the Supreme Court of Wisconsin and the court very carefully pointed out that under the Wisconsin Workmen's Compensation Act it was not necessary that the accident or injury "grow out of" the employment.

Many courts in other jurisdictions have reached somewhat different conclusions. The Supreme Court of North Carolina in Bagwell v. Ernest Burwell, Inc., et al., 227 S.C. 444, 88 S.E.2d 611, held that a physical seizure unrelated to the employment is not such an "accident" as is compensable under the Workmen's Compensation Act. And that where an employee died as a result of

striking his head against the concrete floor during the course of his employment, when he suddenly became rigid and fell backward, compensation was not allowable.

In Dasaro v. Ford Motor Co., 280 App. Div. 266, 113 N.Y.S.2d 413, the Supreme Court, Appellate Division, State of New York, portrayed the rule existing in that jurisdiction by three references as follows: (1) A teamster fell from his driver's seat; two wheels passed over his head and he died. The injury was treated as arising out of employment because even assuming the fall to have been the result of illness, the wheels of the wagon were regarded as increasing the general hazard. (2) The employee walking along an alleyway to a water faucet suffered an epileptic fit, fell to the concrete walk, injured his head and died. The accident was held not to have arisen out of employment. (3) Employee, a laundry worker, fell due to a cardiac condition. In the fall she struck her head against a table which was part of the laundry equipment and was injured. The table was regarded as a special hazard and associated with the work.

In Henderson v. Celanese Corp., 16 N.J. 208, 108 A.2d 267, the Supreme Court of New Jersey in a divided opinion denied recovery to a claimant who had an epileptic seizure and fell on the concrete floor of the company plant suffering a cerebral concussion.

The Supreme Court of Illinois in Prince v. Industrial Comm. et al., 15 Ill.2d 607, 155 N.E.2d 552 (1959) holds with this latter group. There claimant suffered a seizure and fell on a concrete floor which was not level and had cracks in it which varied in width from $\frac{1}{8}$ of an inch to $\frac{1}{4}$ inch and penetrated into the concrete from an eighth of an inch to perhaps one inch. Claimant died as a result. The court said at page 554 of 155 N.E.2d:

"Whether an injury due to an idiopathic fall on a level floor may be said, as a matter of law, to have arisen out

of the employment is a question of first impression in this State. There is a sharp division of opinion among those jurisdictions that have had occasion to consider the question. See cases cited in 99 C.J.S. Workmen's Compensation § 257(1). Counsel for plaintiff in error and for defendant in error have been most helpful with their discussion and analysis of the cases from foreign jurisdictions. We have considered them carefully and are in accord with those holding that concrete floors present no risk or hazard that is not encountered in many places, and that such risks and perils as they do present are only those which confront all members of the public. See, e. g., Cinmino's Case, 251 Mass. 158, 146 N.E. 245, 37 A.L.R. 769; Andrews v. L. & S. Amusement Corp., 253 N.Y. 97, 170 N.E. 506."

Both parties have referred us to the Missouri case of Seabaugh's Dependents v. Garver Lumber Mfg. Co. et al., 355 Mo. 1153, 200 S.W.2d 55. There the employee was on a wagon three feet high "jacking lumber". He suffered a heart attack and fell. His neck was broken. The evidence was not conclusive or definite as to whether he had died from a heart attack and then fell or if he suffered a heart attack, fell and died from the broken neck. As we read the opinion the court held the burden was on plaintiff to prove the cause of death and there was no substantial evidence that the cause of death was a broken neck. Therefore, the award for claimant, approved by the circuit court and the St. Louis Court of Appeals, was reversed. This opinion does not, we think, rule our case, although it does indicate that a fall of three feet from a wagon required to be used in the employment, would meet the requirements and be compensable.

The Springfield Court of Appeals in Gregory v. Lewis Sales Co. et al., 348 S.W. 2d 743, 747, recently gave adherence to the theory that the evidence must show the employee was "exposed to a hazard con-

nected with his employment not common to the general public" and affirmed a denial of the claim for benefits, where an employee "on the job" suffered injuries when a non-employee pulled a chair on which he was sitting from under him.

█ The majority rule in the idiopathic fall cases apparently is that the evidence must show *a hazard connected with the employment not common to the general public* or *a special risk peculiar to the employment* which caused or substantially contributed to cause the injuries, else liability does not arise. We believe that such is and ought to be the rule in this jurisdiction. Appellant vigorously urges us to reverse the commission and remand with directions to award benefits in this case. She declares that the concrete floor upon which the employee fell and the 12½ inch assembly line platform from which he fell each constitutes a special hazard and special risk within the rule. But numerous cases have held as a matter of law that a concrete floor is not such a hazard or special risk for the very simple reason that it is not peculiar to the employment, but is found on most sidewalks, streets and in the flooring of many public and private buildings. Does the 12½ inch drop or step-off any more nearly meet the requirements? Probably it does come closer but again we think such a condition is regularly met by the public and is not generally regarded as a real risk or hazard. A substantially comparable step-off is found whenever we walk along a street curbing or step off the sidewalk to cross the street. And when we go down two or more concrete steps from our front door to the sidewalk, from a place of business to the street or down the steps of most courthouses, there is a potential possibility of a greater fall, and hence a greater hazard. Furthermore, we are not trier of the facts. If we were to reverse the commission here, we would be holding, as a matter of law, that a special hazard arising out of the employment not only existed, but caused at least a part of the injuries, and that reasonable minds could not fairly, justly and reason-ably come to any other conclusion. We cannot and shall not so hold.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.